MILLER, BY HER NEXT FRIEND, MILLER *v*. SMITH.

[No. 18,560. Filed March 2, 1955.]

294

Grace B. DeArmond, Lawrence Booram, of Anderson, and *Worth H. Castor,* of Noblesville, for appellant.

*Christian, Waltz & Klotz,* of Noblesville, and *Busby, Davidson & Cooper,* of Anderson, for appellee.

KELLEY, C. J.—On December 4, 1950, appellant, Edna Hurston Miller, was a guest passenger in an automobile operated by appellee at the time said automobile and a locomotive of the Nickel Plate Railroad collided at the intersection of the tracks of said railroad with Kilgore Avenue in the City of Muncie, Indiana. This action was brought by said appellant against appellee to recover damages for personal injuries allegedly sustained by appellant as a result of said collision.

At the conclusion of appellant's evidence, the court, upon appellee's motion, directed the jury to return a verdict for appellee. Such verdict was duly returned and judgment for appellee was rendered thereon. Appellant asserts, in varying ways, that the court erred in directing said verdict. Whether it did or not is the sole question for our consideration.

Appellant's amended complaint, in substance, charges the appellee with wanton and wilful misconduct in the operation of said automobile at the time alleged. The parties contend as to one point only and that is the sufficiency of the evidence to establish wanton or wilful conduct on the part of appellee. However, we are inclined that the true inquiry is whether, considering only such evidence and inference as is favorable to appellant, there was any evidence which should have gone to the jury on the issue; or, stated differently, whether there was a total absence of evidence and inference in favor of appellant as to the alleged wanton or wilful misconduct of appellee.

Before reciting the evidence, we pause to observe that this action is predicated upon Ch. 259, Acts 1937, Sec. 1, page 1229, Sec. 47-1021, Burns' 1952 Replacement, and that our Supreme Court in defining the meaning of the words "wanton" and "wilful," as used in said Act, held them to be "closely synonymous." *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 606, 50 N. E. 2d 875.

The record discloses the following evidence given on behalf of appellant in support of her complaint, which is deemed amended to conform thereto: The Nickel Plate Railroad tracks, four in number, run in a northwesterly and southeasterly direction, and across State Highway 32, which is known as Kilgore Avenue, within the city limits of Muncie, Indiana. Kilgore Avenue is 18 to 20 feet wide and extends east and west. There is a signal cross-arm at the northeast corner of said intersection which, from the photographs in evidence, is affixed to the top of an upright post of sufficient height that the cross is observable from the highway. There is a street light which overhangs said crossing, which was burning the night of the accident.

At about 9 o'clock P.M., on the 4th day of December, 1950, appellee, operating a Chevrolet automobile occupied by himself, as driver, the appellant on his right in the front seat, and two other persons in the rear seat, was proceeding into said City of Muncie from the west on said Kilgore Avenue. Appellant was a guest passenger. The weather, at said time, was fair but cool. There was no snow, ice or water on the ground. At that time a train on the main track was entering said intersection from the southeast at a speed of about 15 miles per hour.

Appellant testified, in part: "I got in the car and sat on the right front seat. . . . We then headed in

the car for Muncie over State Road 32, traveling about 50 miles per hour. There are a lot of curves to the road. I do not remember Mr. Smith slackening the speed of his car after we entered the city limits of Muncie. As we approached the Nickel Plate tracks . . . there was a car stopped ahead of us. Smitty (appellee) pulled out around it. I screamed. I think the watchman was standing out there. That is the last I remember."

Atwood R. Allen said, under oath, that about 8:40 o'clock P.M., the evening of December 4, 1950, he left his home in a truck to go to a filling station across the tracks. . . . "As I drove onto Kilgore Avenue from Second Street I saw a train coming out of town from the east. I knew a train was approaching because the light was working. . . . Besides the oscillating light the head light was burning. . . . The bell was ringing, I heard the train blow its whistle . . . approximately 400 feet from the intersection. I stopped my truck 15 feet on the north side of the tracks, headed toward Anderson. . . . I saw the watchman at the crossing standing in the center of the street about 7 feet to the left ahead of my truck. . . . He had a light in his hand and a stop sign. It was a bright lantern, a big one, big enough to see for a distance, and . . . a red color. The watchman was swinging that lantern giving signal for oncoming traffic to stop. Directly across the tracks I saw one motor vehicle which had . . . stopped for the train. . . . Its lights were burning.

"The lights of my truck were burning. As the train was almost in the intersection a car was coming into Muncie from the west on the opposite side of the tracks from me, at a speed of 35 miles or faster. He swung out to the left from the car already stopped for the train *onto the left hand side of Kilgore Avenue* and drove in front of the train *which was then in the*

298

*intersection. . . .* He didn't slack his speed as I could see. . . . That watchman . . . jumped astraddle the radiator of my car, in fact he jumped to keep from getting hit by the car that was struck by the train. . . . A street light was burning that night near where I stopped and provided illumination for that point of Kilgore Avenue. . . . There were stop, look, and listen signs at that intersection."

Roy Hahn, watchman at the crossing gave testimony, in part as follows: ". . . As the train approached the crossing I heard the engineer blow all his signals, signal whistle, bells was ringing. There was a regular light and an oscillating light burning on the locomotive. . . . When I saw and heard it (the train) I picked up a lantern. . . . It was a regular flagman's oil lantern with an amber globe. I also had a whistle in my hand. . . . I swung the lighted lantern and blew my whistle. . . . The lights were burning on that car (the car which was stopped at the crossing in front of appellee's car) and also on the truck. I saw a car approach which I later learned was driven by Mr. Smith (appellee). When I first saw him he was about 12 feet from the main track. He was just passing the other car that was stopped and coming up on the tracks. *I swung my lantern and blew my whistle, but he continued to cross the tracks.* He was so close I tried to get away. I jumped and climbed over the truck there by me . . . The bells of the engine were ringing; the whistle was blowing; the oscillating light was on; the headlight was on. The oscillating light throws a beam . . . ahead a thousand feet and also goes a thousand feet on each side. The light was doing this that night. . . . I was waving the lantern and blowing the whistle. The lights were burning on the Smith car, on the car stopped, and on the truck. The train had blown its whistle four

times for the crossing . . . On the north side of the crossing there is a railroad crossing sign . . . *There is another cross-arm signal down the highway back of the curve, perhaps 500 feet.* . . . The street from Anderson . . . goes into town, and a motorist is traveling almost a straight line. . . . He (appellee) kept on coming and I kept on swinging (my lantern) *but there was no change.* . . . There was nothing between my lantern and the Smith (appellee) car. . . . there was nothing to prevent him from seeing this lantern."

Vera Campbell, one of the passengers in the rear seat, said that she did not remember anything that happened at the railroad crossing that night. . . . the collision with the train was a complete blank to her.

There was further evidence that the locomotive struck appellee's automobile and carried it 200 feet down the track before the train came to a stop; that appellant's body was bent up on the right hand side of the automobile and she couldn't be removed from the car until the locomotive backed up and a section of the automobile cut out with an acetylene torch; and that she suffered severe injuries.

Appellee's whole contention is that "There is a total failure on the part of the appellant to prove that the appellee had any knowledge or was conscious of the existing danger, either through the exercise of his own senses or through warning by others."

Our courts have laid down legal principles applicable to the determination of the meaning of the words wanton or wilful as used in the guest act of this state, and what wilful or wanton misconduct consists of. However, no all-inclusive rule can be adopted for application to every case. *Sheets* v. *Stalcup* (1938), 105 Ind. App. 66, 13 N. E. 2d 346. "Because of the difficulty of defining with precision the terms used

in guest statutes to describe . . . misconduct for which the owner or operator is liable, in determining whether particular conduct falls within such terms each case must be decided on the circumstances peculiar to it; *every act or omission* entering into the particular happening *must be considered and weighed in connection with all the other circumstances,* and in arriving at such decision the *consequences of one's conduct* as well as the conduct itself may be determining factors, . . ." 60 C. J. S., Motor Vehicles, Sec. 399 (4) f. page 1007; *Sheets* v. *Stalcup, supra; Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836. (Our emphasis.)

In *Kahan* v. *Wecksler* (1938), 104 Ind. App. 673, 12 N. E. 2d 998, it is said: "When one by a continuous course of conduct *seems* to exercise *no concern for others* he is usually both wilful and wanton." (Emphasis supplied.) And in *Bedwell* v. *DeBolt, supra,* it was significantly observed that "acts such as *exhibit* a conscious indifference to consequences, make *a case* of *constructive* or *legal* wilfulness." (Our emphasis.) The court, in said Bedwell case, also adopted as its own language a quotation from Blashfield, Cyc. of Automobile Law and Practice, Vol. 4, to the effect that the operator's knowledge of the probable result of his conduct may be "express or implied."

"The question as to whether the accident was caused by the wanton or willful misconduct of the defendant should be left to the jury in all cases where there is any conflict in the evidence or *where different inferences from the testimony given might be reasonably drawn.* Yet the case should be submitted under instructions which clearly and simply inform the jury that there must be something more than negligent conduct to justify recovery." *Pierce* v. *Clemens, supra.* (Emphasis supplied.)

In the light of the expressions of the court in the cases we have referred to, we cannot say, as a matter of law, that the evidence, summarized above, is reasonably susceptible of only one inference and that that inference would be favorable to appellee's contention.

The evidence given by the appellant in this cause as to the conduct of appellee is much stronger, by comparison, than the allegations of the defendant's conduct in the complaint considered by us in the case of *Kirsch* v. *Harker* (1950), 120 Ind. App. 66, 89 N. E. 2d 924. If the evidence in the instant case was insufficient to go to the jury on the issue involved, then we were in error in ordering the overruling of the demurrer in the case referred to.

In *Rickner* v. *Haller* (1954), 124 Ind. App. 369, 116 N. E. 2d 525, on page 529, we said: "There was, therefore some evidence before the jury from which ■ . . . the jury may have concluded . . . that he (appellant) heard what in the ordinary course of events men are presumed to hear," and we may here add that the jury under the evidence in the instant case, could reasonably infer that appellee saw that which was visible before him. In view of the modern day requirements for the right to drive and operate a motor vehicle upon public highways, it cannot be logically assumed that appellee, while operating said automobile at the time related, was without sight and without hearing. A survey of the composite evidence in this record with relation to appellee's asserted position, recalls the words of the Master to the Disciples: "Having eyes, see ye not? and having ears, hear ye not? . . ." Mark 8:18.

Appellee, in his brief, says: "We rely, as did the lower court in this case, upon the decision of this court in the case of *Becker* v. *Strater* (1947), 117 Ind.

App. 504, 72 N. E. 2d 580. . . ." However, the facts in the Becker case were totally dissimilar to the facts here disclosed. Further, as we have previously pointed out, each case must be determined on the circumstances peculiar to it.

We think it clear that, from the evidence here apparent, the jury could have drawn an inference in opposition to that asserted by appellee; that the trial court erred in depriving the jury of the privilege of considering the evidence; and that it improperly directed a verdict for the appellee.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 124 N. E. 2d 874.