Lemans v. Wiley.

Filed Jan. 3, 1884.

---

No. 8127.

## LEMANS v. WILEY.

MONEY HAD AND RECEIVED.— *Voluntary Payment.*—A widow, to avoid foreclosure of a mortgage given by her husband, and of a vendor's lien, upon lands of which her husband died seized, made payments thereon, wholly covering a note representing the vendor's lien, which was delivered to her, and obtaining credits, endorsed on the mortgage note. She made these payments expecting to be reimbursed out of her husband's estate, and was told by the creditor and her own son that that would be done in the end. There was no offer to return the note.

*Held*, that she could not maintain a suit against the creditor for money had and received.

SUPREME COURT.—*New Trial.*— *Weight of Evidence.*—The rule that the Supreme Court will not award a new trial on the evidence, where there is

evidence tending to support the verdict, does not authorize an affirmance upon isolated statements of a witness in conflict with other statements of the same witness, and with the other evidence in the cause.

From the Wabash Circuit Court.

*M. H. Kidd, N. G. Hunter, M. B. Williams* and *T. E. Johnson,* for appellant.

*W. G. Sayre* and *J. T. Hutchens,* for appellee.

ZOLLARS, J.—The complaint by appellee against appellant is for money had and received. Trial, verdict, and, over a motion for a new trial, judgment for appellee for $211.75. The overruling of the motion for a new trial is assigned as error in this court. One of the causes urged for a new trial is that the verdict is not sustained by sufficient evidence.

The following are some of the cases in which an action for money had and received will lie:

"If one man has obtained money from another through the medium of oppression, imposition, extortion or deceit, such money is, in contemplation of law, money received for the use of the injured party. It is not the money of the wrong-doer, he has no right to retain it; and the law, therefore, implies a promise from him to return it to the lawful owner, whose title to it can not be destroyed or annulled by the fraudulent and unjust dispossession. * So, where money has been received by mistake of facts, or without consideration, or upon a consideration that has failed, it may be recovered back. So, money received under a special contract that has been rescinded, may be recovered in an action for money had and received." *McQueen* v. *State Bank,* 2 Ind. 413. See, also, *Muir* v. *Rand,* 2 Ind. 291; *Hatten* v. *Robinson,* 4 Blackf. 479; *Ferguson* v. *Dunn,* 28 Ind. 58; *Hunt* v. *Milligan,* 57 Ind. 141.

"An action of assumpsit for money had and received is an equitable remedy that lies in favor of one person against another, when that other person has received money either from the plaintiff himself or third persons, under such cir-

cumstances, that in equity and good conscience he ought not to retain the same, and which, *ex æquo et bono,* belongs to the plaintiff." 4 Wait Actions and Defenses, p. 469. Other cases might be instanced, but these are sufficient for present purposes.

Does the evidence in this case make a case against appellant for money had and received?

The undisputed facts in the case are as follows, viz.: Jackson Wiley, the husband of appellee, died in March, 1877, the owner of a tract of land, which descended to his children and his widow, appellee. This land was purchased from appellant by said Jackson Wiley, and at the time of his death $400 and over of the purchase-money was unpaid. For this appellant held two notes executed by said Wiley on the 28th day of August, 1875, one for $100 and one for $300, the latter being secured by mortgage upon the land. In September, 1877, appellant being in need of money, called upon appellee with the notes and said to her that he wanted the money on the notes held by him (which were then overdue), and that if he could not get some of the money he would have to foreclose the mortgage. At the time of this call appellant was indebted to one English upon a promissory note in the sum of $103. Appellee had sold personal property to English, and in part payment therefor had become the owner of his note on appellant. English owed her a balance over and above the note. Appellee put this note into the possession of appellant, and paid him $12 in cash. Upon receiving this note and the $12 in cash, the following endorsement was made upon the $100 note held by appellant, viz.: "Wabash, September 7th, 1877. Received of Charlotte Wiley one hundred and fifteen dollars in full of this note and interest." This credit consisted of the English note so received by appellant, and the $12 in cash; and they together equalled the principal and interest of the note upon which the credit was so made.

After this endorsement was so made, the note containing it was surrendered to appellee, and she has held it ever since, and made no offer to return it to appellant. On the same day this note was so surrendered, a son of appellee paid to appellant $46.70, which was credited upon the $300 note held by appellant, as follows: "46.70. Wabash, September 7th, 1877. Received of James Wiley forty-six and $\frac{70}{100}$ dollars." On the next day appellant received of appellee, or of the money due her from English, $78, and the same was endorsed upon the $300 note, as follows: "$78. September 8th, 1877. Received by the hands of C. Wiley seventy-eight dollars, to apply on the within note."

Appellee wanted the endorsements made on the notes, so as to show that she had paid the money. After the endorsements were made, they were read over to her. At that time appellee was living upon the land, and there was some talk about paying off the mortgage.

William Wiley, a son of appellee, told her that if the land should be sold she would get her money back. In the fall of 1878, the residue of the $300 note not having been paid, appellant foreclosed his mortgage for the balance due upon that note, giving credit for the amount endorsed upon it. To this foreclosure proceeding appellee was a party.

As we have said, the above are the undisputed facts in the case; they are gathered, in the main, from the testimony of appellee.

Appellant testified that all of the money received by him, including the English note, was received as payments upon the notes held by him, and that, in pursuance of such payment, he surrendered one of said notes to appellee. In testifying in the case, appellee's sons, as well as herself, almost uniformily speak of the *payment* to appellant. Upon the whole evidence in the case, there can scarcely be a doubt that the note and money received from appellee by appellant were paid and received in full payment of one, and in part payment of the other, of the notes held by appellant.

It is contended, however, that the testimony of appellee tends to sustain the verdict and make good the averments of the complaint, and that, therefore, the judgment can not be reversed upon the weight of the evidence. The statements of appellee, other than as contained in the above stated facts, are as follows:

"I let him have the money. At the time I let defendant have the money he held two notes that were due, given by my deceased husband; and when he came he said he wanted money on them, and if he could not get some he would have to foreclose the mortgage on the land; he came with the notes, and I traded notes; nothing was said, particular, about paying out the farm; I suppose he wanted money, and I paid it to him; after the endorsements were made he read them over to me, and said that it was according to law, and that I would get the money back when it was settled up; if we did not pay out the land, I was to get my money back, though he did not just say that; he did not say that he would pay it back, but that I should not lose anything by it; William Wiley (a son) said if the land was sold I would get my money back; I paid $115 and $78; I got the $100 note of defendant, and have had it ever since."

It is true, that in another place she says that she did not pay the money upon the note and mortgage, but her testimony as a whole shows that she did pay it in exchange for the $100 note, and as part payment of the other note held by appellant. The rule that this court will not reverse a judgment when the evidence tends to sustain the verdict or finding does not go so far as to authorize an affirmance upon an isolated statement of a witness which is in conflict with other statements of the same witness. Taking the whole of her testimony together, there is nothing showing, or tending to show, that appellant obtained the money and note from her "through the medium of oppression, imposition, extortion or deceit," nor that it was paid over and the notes exchanged through mis-

take of facts; nor is there anything to show a want or failure of consideration, nor that there was a special contract which had been rescinded.

There was no contract or promise on the part of appellant to receive the money or note as the money and note of appellee, or to in any way return the one or its amount, or repay the other. The consideration was ample. Appellee was not personally liable upon the notes held by appellant, but she was the owner of the undivided one-third of the land held for the purchase-money and covered by the mortgage, and was interested in the extinguishment of those liens, and, besides, appellant surrendered a note that might have been enforced against the land, or against the personal estate of appellee's husband, if there was any.

This note is not shown to have been a worthless thing, and we know of no rule of law or equity which will sanction her holding it, and recovering of appellant what she paid for it. It is not a sufficient answer to say that she was not legally liable upon the notes held by appellant, nor for the purchase-money for the land. She had the undoubted right to make the payments, and had the balance of the debt been paid, and the land saved, she doubtless would have been entitled to contribution from the heirs, as was told her by appellant and her son. The money was voluntarily paid, and money so paid can not be recovered back. *Lafayette, etc., R. R. Co.* v. *Pattison*, 41 Ind. 312 ; *Worley* v. *Moore*, 77 Ind. 567 ; *Thompson* v. *Doty*, 72 Ind. 336. Had the balance of the purchase-money been paid and the land saved, the payments by appellee might have been a wise thing. As it turned out, her payments proved to be a misfortune to her; but the courts can not repair the many misfortunes which follow accidents, ill luck, ill health and bad judgment. We are of the opinion that the evidence does not make, nor tend to make, a case against appellant for money had and received, and that for this reason the judgment must be reversed. Having reached

this conclusion, it will not be necessary to indicate any opinion upon other and minor questions discussed by counsel.

Judgment reversed, with costs.

HOWK, C. J., and ELLIOTT, J., dissent.