BEDWELL *v.* DeBOLT.

[No. 27,910. Filed October 8, 1943.]

*Roscoe D. Wheat,* of Portland, and *Francis A. Shaw,* of Muncie, for appellant.

*Hubert R. McClenahan, of Decatur, and Moran & Abromson,* of Portland, for appellee.

SHAKE, J.—This is an action for personal injuries suffered by the appellee when an automobile in which she was riding collided with a locomotive at a public highway crossing. There was a jury trial resulting in a verdict and judgment against the appellant for $3,000.

The first question for consideration is whether the trial court committed reversible error in overruling a demurrer to the appellee's amended complaint upon which the action was tried. The memorandum attached to the demurrer charged that the facts alleged in the amended complaint amounted to nothing more than negligence, and were not sufficient to charge "wanton or wilful misconduct" within the meaning of ch. 259, Acts 1937, § 47-1021, Burns' 1940 Replacement, § 11265, Baldwin's Supp. 1937, upon which the action was predicated.

The amended complaint alleged that the appellee was the guest of the appellant in an automobile operated by him and that, without stopping, looking, or slackening his speed, the appellant drove his automobile upon a railroad crossing, with which he was familiar, at 40 miles per hour in the nighttime, when a locomotive was proceeding over said crossing at 2 miles per hour and when a flasher signal displaying red lights was in operation and clearly visible to him.

Before we would be justified in reversing the judgment for error in overruling the demurrer, we would have to determine from the whole record that the appellant was prejudiced thereby. § 2-3231, Burns' 1933, § 505, Baldwin's 1934. There is

evidence in the record, which was admitted without objection, to the effect that the appellant was warned of the danger which confronted him by the other occupants of the automobile in time sufficient to have avoided the accident, but that he made no effort to stop the automobile or reduce its speed. These facts must be considered with those alleged in the amended complaint in determining whether the appellant was harmed by the ruling on his demurrer. *Pittsburgh, etc., R. Co.* v. *Rushton* (1929), 90 Ind. App. 227, 148 N. E. 337, 149 N. E. 652. *Fidelity & Cas. Co. of N. Y.* v. *State ex rel. McWhir* (1942), 110 Ind. App. 507, 32 N. E. (2d) 102. The complaint might have been amended after trial to conform to the proof.

The original "Guest Statute" of this State provided that no guest should have a right of action against the owner or operator of a motor vehicle, unless the accident "shall have been intentional on the part of such owner or operator or caused by his reckless disregard of the rights of others." Acts 1929, ch. 201, p. 679. That act was construed as relieving owners and operators from liability caused merely by failure to exercise ordinary care. *Coconower* v. *Stoddard* (1933), 96 Ind. App. 287, 182 N. E. 466. The present act amended the Act of 1929 to read as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle." Acts 1937, Ch. 259, § 47-1021, Burns' 1940 Replacement, § 11265, Baldwin's Supp. 1937.

The question then arises as to the meaning of the words "wanton and wilful misconduct," as used in the above act. On this phase of the case we find ourselves in complete agreement with what was said by Blessing, C. J., when this case was before the Appellate Court of Indiana (47 N. E. (2d) 176). We, therefore, adopt as our own the following language employed by him:

"Blashfield has defined 'wanton misconduct' as 'the intentional or wanton disregard of the safety of others, and is manifested by conduct which is of such a character as to indicate the autoist's indifference to the consequences of his acts.' The same author defines 'wilful misconduct' as 'the intentional doing of something which should not be done, or intentional failure to do something which should be done, in the operation of the automobile, under circumstances tending to disclose the operator's knowledge, express or implied, that an injury to the guest will be a probable result of such conduct.' Blashfield, Cyc. of Automobile Law & Practice, Permanent Ed., Vol. 4, § 2322, pp. 109 and 110.

"Berry, in his work, defines 'wanton conduct' as follows: ' "Wantonness" ' . . . is the conscious doing of some act or the omission of some duty with knowledge of existing conditions, and conscious that, from the act or omission, injury will likely result to another.' Berry, Automobiles, Seventh Ed., § 2.340. There would seem to be little, if any, difference in the definition of 'wantonness' by Berry and the definition of 'wilfulness' by Blashfield. While the word 'wilful' may be used in a broader sense than the term 'wanton,' we are of the opinion that the meaning of the two words, as used in the Guest Statute, is closely synonomous.

"In determining what constitutes a 'wilful' or 'wanton' act, we subscribe to the view that it is not necessary

to prove that defendant deliberately intended to injure the plaintiff; it being sufficient if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequences of his act was injury to the plaintiff. *Baines* v. *Collins* (1942), 310 Mass. 523, 38 N. E. (2d) 626, 138 A. L. R. 1123. See also the Restatement of Law on Torts, § 500, page 1293. And further, acts such as exhibit a conscious indifference to consequences, make a case of constructive or legal wilfulness. *Kahan* v. *Wecksler* (1938), 104 Ind. App. 673, 12 N. E. (2d) 998; *Jeneary* v. *Chicago & Interurban Traction Co.* (1923), 306 Ill. 392, 138 N. E. 203; *Reell* v. *Central Illinois Electric & Gas Co.* (1942), 317 Ill. App. 106, 45 N. E. (2d) 500. To hold one guilty of 'wilful' or 'wanton' conduct, it must be shown that he was conscious of his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries. *Murphy* v. *Snyder* (1939), 63 Ohio App. 423, 27 N. E. (2d) 152; *Bartolucci* v. *Falletti* (1942), 314 Ill. App. 551, 41 N. E. (2d) 777. Ill will is not a necessary element. *Bernier* v. *Illinois Cent. R. Co.* (1921), 296 Ill. 464, 129 N. E. 747, affirming 215 Ill. App. 454.

"Knowledge of existing conditions on the part of the host is a consciousness of such conditions obtained through the exercise of his senses, or information obtained by warning through others." There was evidence of such warnings and we cannot say that the appellant was harmed by the overruling of his demurrer to the amended complaint.

The appellant filed an answer in two paragraphs. The first disclaimed any information as to the several

material allegations of the amended complaint, which amounted to a denial under Rule 1-3, 1940 Revision. The second alleged that "the plaintiff . . . elected to file a claim against the New York, Chicago & St. Louis Railroad for the injuries sustained by her in said collision, . . .; that the plaintiff fixed and determined the extent and value of the injuries sustained by her and the same was paid in full by the . . . Railroad Company and a receipt and release was executed by the plaintiff to the said . . . Railroad Company therefor." There was no demurrer or motion to paragraph or make more specific addressed to the answer.

At the trial the appellant introduced evidence, over the appellee's objection, to the effect that the appellee's husband (who is acting as her next friend in this action) had been appointed her guardian by the Adams Circuit Court, and that the guardian had asked and obtained authority from said court to execute, for a consideration of not less than $1,000, a covenant not to sue said railroad company. The appellant also introduced in evidence answers to interrogatories made by the appellee disclosing that her guardian had received $3,000 from the railroad company. The guardian was then asked by counsel for appellant: "I wish you would tell the jury if the New York, Chicago & St. Louis Railroad Company paid you as guardian any sum of money for the injuries your wife sustained in that collision." This was objected to on the grounds that there had been no evidence of a settlement and that the record of the guardianship proceeding would be the best evidence. The objection was sustained and this ruling is assigned as error.

There is no merit in the proposition that the record of the guardianship proceeding constituted the best

evidence as to whether the railroad company paid the guardian anything for the appellee's injury. In this State a guardian has authority to accept satisfaction for injuries done his ward. The order of the Adams Circuit Court directing the appellee's guardian to execute a covenant not to sue the railroad company for a consideration of not less than $1,000, did not preclude the guardian from accepting $3,000 in full payment for said injuries.

It is well settled that all joint tort-feasors liable for an injury are discharged by the unqualified release of one. The amount of the consideration paid for such a release is immaterial so long as it is sufficient to support a contract and the transaction is not tainted by fraud or mistake. Likewise, full satisfaction of such a claim for damages by one of the tort-feasors operates to discharge all, though no release is executed. On the other hand, it is equally well settled that a covenant not to sue one tort-feasor does not bar. an action against the others, but only operates as a satisfaction of the damages, *pro tanto*, as to the benefits received. But if the consideration paid for a covenant not to sue is full compensation for the injury, the liability is discharged as to all, regardless of the character of the instrument. And it may be added that under an answer of full satisfaction by a joint tort-feasor a defendant is entitled to a *pro tanto* credit for anything less than full payment which the plaintiff has received from that source. Whether the payment was in full or partial is for the jury to determine from the evidence. This is consistent with the rule that an answer of payment will authorize proof of a credit. 48 C. J., Payment, § 171, p. 678.

The appellant's second paragraph of answer alleges

both a release and a payment. The effect of such a pleading is clearly expressed in *Reno* v. *Hollowell* (1827), 2 Blackf. 38, where it was said:

"This plea sets up two distinct matters of defence, payment, and a release, either of which alone, if well pleaded, would be a sufficient bar to the action. The plaintiff might have objected to it, by special demurrer, for duplicity; but not having done so, he was bound to answer all its parts."

Under the issues it was proper for the appellant to show that the claim sued on had been fully compensated by the railroad company. The rejected evidence was calculated to do this and its exclusion was error. That the trial judge misconstrued the issues is further disclosed by instruction 8, given on the court's own motion. By this charge the jury was told that it was not to consider that the railroad company had paid the plaintiff $3,000 for any purpose. This was likewise error for the reasons stated. Had the jury been permitted to determine the issue presented by the second paragraph of answer, the verdict might have been for the defendant. The case of *Parry Mfg. Co.* v. *Crull* (1914), 56 Ind. App. 77, 101 N. E. 756, lends no support to the appellee's contentions. On the contrary, it is authority for the conclusions we have reached.

The judgment is reversed with directions to sustain the appellant's motion for a new trial and for further proceedings.

NOTE.—Reported in 50 N. E. (2d) 875.