### MARZACCO v. LOWE, Deputy Commissioner of U. S. Employees' Compensation Commission, et al.

### No. C. A. 3246.

District Court, D. New Jersey.

Jan. 12, 1945.

Nathan Baker, of Hoboken, N. J., for plaintiff.

Thorn Lord, U. S. Atty., of Newark, N. J., for defendant Samuel S. Lowe, Deputy Commissioner.

John W. Taylor, of Newark, N. J. (Charles F. Bachmann, of Boston, Mass., of counsel), for defendant Steamship Terminal Operating Corp.

FAKE, District Judge.

This cause comes before the court in proceedings for a judicial review of a compensation order made by the Deputy Commissioner dated November 15, 1943, wherein the claim of the plaintiff for compensation benefits against the defendant-employer was denied.

Plaintiff's deceased, who was 57 years of age, had been employed for some years as a longshoreman and was so employed on January 7, 1941, when he suffered a heart attack and died while at work. The claim is based on an alleged accidental injury said to have occurred on the preceding day when deceased, while engaged with others in moving a case of machinery in the hold of a vessel, was struck by a crowbar which slipped from his grasp falling on his jaw and chest.

The Deputy Commissioner found in his memorandum of November 9, 1943, that deceased was suffering at the time from a serious heart ailment of prior standing of which he had no knowledge. This is fully borne out by the uncontradicted testimony of medical experts based on an autopsy.

The Deputy Commissioner then stated the problem before him as follows: "The only question is, therefore, did he suffer an accidental injury to his chest which precipitated the attack or was it the attack that compelled him to drop the crowbar, which in falling, struck his chest?"

Upon a reading of the entire record and a study of the briefs, it is clear that the Deputy Commissioner properly stated the narrow issue on which the entire case depended. The Deputy Commissioner found that the death of deceased on January 7, 1941, was not the result of an accidental injury sustained in the course of his employment on January 6, 1941, nor was the death precipitated by the alleged accident of that date.

The question before the Deputy Commissioner having been thus clearly stated, it may be well for this court to state specifically the more limited question which arises here.

Because the issue was such a narrow one before the Deputy Commissioner and is further limited on review here, it becomes necessary to give very close study to the statutory and case law on the subject before attempting to state the question which is left for this court to decide.

The statute with which we are concerned is known as the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., 921(b) thereof provides that: "If not in accordance with law, a.

compensation order may be suspended or set aside, in whole or in part * * *." This language was construed by Mr. Chief Justice Hughes in Crowell v. Benson, 285 U.S. 22, 46, 52 S.Ct. 285, 291, 76 L.Ed. 598, to mean that, "* * * the findings of the deputy commissioner, *supported by evidence* and within the scope of his authority, shall be final." (Emphasis added.) This construction was arrived at to support the validity of the act in the year 1932.

Thereafter, and in January of 1944, the Circuit Court of Appeals for the Second Circuit decided the case of Steamship Terminal Operating Corporation, et al. v. Schwartz, 2 Cir., 140 F.2d 7, 8, and in a per curiam opinion said: "— the Supreme Court has several times declared that, if there is evidence to support the findings of a deputy commissioner, they must be affirmed; and by this we understand 'substantial' evidence." Later, in March of 1944, and after the word "substantial" had been thus added by the Second Circuit, the Supreme Court again dealt with the subject in Norton v. Warner Co., 321 U.S. 565, 568, 64 S.Ct. 747, 749, and said: "* * * the District Court was not warranted in setting aside such an order because the court would weigh or appraise the evidence differently. The duty of the District Court, we said, was to give the award effect, 'if there was evidence to support it.' 309 U.S. at page 258, 60 S.Ct. at page 548, 84 L.Ed. 732[1]." In May of 1944 an opinion in the case of Bernatowicz v. Nacirema Operating Co., 3 Cir., 142 F.2d 385, was handed down in this circuit, and there again the word "substantial" is added to the phrase used by the Supreme Court.

Nothing else appearing, this court would be called upon to state the question here in the language of the Supreme Court, omitting the requirement of *substantial* evidence. But as to this we shall see.

The National Labor Relations Act, 29 U.S.C.A. § 160(f) provides that, "The findings of the Board as to the facts, *if supported by evidence,* shall * * * be conclusive." (Emphasis added.) It is noted that this statutory provision is substantially the same as the language used in the construction placed on the statutory provision with which we are here concerned. In construing the meaning of the language above quoted from the National Labor Relations Act, the Supreme Court said, in Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126, "We agree that the statute, in providing that 'the findings of the Board as to the facts, if supported by evidence, shall be conclusive', * * * means supported by substantial evidence. * * * Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

In the light of the foregoing cases this court may state the question arising here in the language used by the Circuit Courts of Appeals without violence to the intent of the Supreme Court.

Therefore, the question here is: Was there substantial evidence, as these words are above defined, to sustain the Deputy Commissioner?

It must be borne in mind that the evidence with which the Deputy Commissioner was concerned was largely, if not indeed entirely, confined to the field of expert medical testimony and the question as to whether the death was caused or accelerated by an extremely aggravated heart condition or by a trivial accident was not an easy one to answer. The Deputy Commissioner says he studied the record "assiduously" and "deliberated upon it uncommonly long". I have had a like experience with it although the labor here is lessened by a one-sided scrutiny and study to find testimony to sustain the Deputy Commissioner's conclusions. Here the niceties involved in weighing the evidence on one side against the evidence on the other do not appear. The work here is confined within the question above stated and the testimony of the two experts produced for the defense furnishes the substantial evidence needed to sustain the Deputy Commissioner.

The defense produced two expert medical witnesses, specialists in cardiology of long standing, who were called upon to answer a long hypothetical question, based on all the factors involved, and their answers alone furnish the substantial evidence required to sustain the Deputy Commissioner's conclusions. For example, Dr.

---

1 This reference is to South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732.

Cary Eggleston called by the defense, testified as follows:

"A. From the evidence presented, there are two outstanding facts:

"First, even upon careful post mortem examination there is no residual evidence of any significant injury to tissue of any sort as a result of the alleged blow by the crowbar.

"2. Autopsy findings reveal an advanced long standing arteriosclerosis which is a natural senescent process and that this arteriosclerosis was apparently dominantly present in the coronary bed. It is my opinion that although the man died shortly following the accident, his death was the result of natural causes and was not hastened nor precipitated as a result of the alleged accident."

Dr. Milton Helpern also called by the defense testified as follows:

"A. In my opinion there was no connection either directly or indirectly with the occurrence of January 6th and the death upon January 7th, and the reasons for that opinion are as follows:

"First of all, this man had an alleged accident on the 6th of January. He died the following day. During the interim he was able to walk home, complained of feeling ill that night, got up the next morning, returned to work, and he died suddenly on the morning of the 7th, about eighteen hours after the alleged occurrence, as I remember the facts.

"The autopsy which was done in this case indicates that this man did not receive any physical injury which was severe enough, at least, to leave any physical signs of trauma, that is, there was no bruise or discoloration of the skin, nothing at all to indicate a severe blow with the crowbar which he was working with.

"The findings on autopsy also show very adequate cause of death in the man's heart. The heart was very much enlarged and it was twice the normal size. The coronary arteries were markedly diseased, and besides, this man had an infarction in his heart which was recognizable to the pathologist three months after the man died.

"Now, that infarction that was present, in my opinion, was more than eighteen hours old. An infarction that is evidence takes more than twenty four hours to develop, and the process is a biological one and the change would not take place too soon.

"For that reason I believe that the infarction this man had in his heart muscle preceded the alleged occurrence. Obviously, the coronary artery disease is of long standing.

"Now, it is perfectly true that this man may have had no symptoms during life to his heart and he may have thought he was in fairly good health, and he may have participated in physical activity of the heaviest sort, but let us not forget that the heart is a very tough organ and able to suffer a great deal of disease and trauma and show no symptoms until the sudden death of the man, and in my opinion, the process was entirely natural."

"It is perfectly true that a man with a heart like that, if he over exerts himself or if he over strains himself, or even injures himself severely, may die at the time. In other words, if this man's death had occurred immediately, I would say that there was a possibility that the blow or the occurrence may have been a factor in his death. But with the time period of eighteen hours elapsing, it becomes highly questionable and speculative to associate it with that occurrence.

"In other words, for that occurrence to cause death in this man, it would have to cause death immediately in order for you to be able to associate it."

Under the present prevailing system of administrative law, all evidence to the contrary of that above quoted is a closed book into which this court dare not peek, at least not effectively.

The order of the Deputy Commissioner is sustained.