## BUROKER *v.* BROWN.

[No. 30,071. Filed March 9, 1961.]

*Dillon & Volstad,* and *Symmes, Fleming & Symmes,* both of Indianapolis, for appellant.

*Smith & Yarling, Robert S. Smith* and *Richard W. Yarling,* of Indianapolis, and *James D. Acher,* of Franklin, for appellee.

ACHOR, J.—This case comes to us on petition to transfer from the Appellate Court, under §4-215, Burns' 1946 Repl.[1]

---

1. See: *Buroker* v. *Brown* (1959), 159 N. E. 2d 140.

Note: This case was reassigned to Achor, J., on January 31, 1961.

As cause for transfer, appellee asserts that the opinion of the Appellate Court contravenes the ruling precedent of this court, as stated in the case of *Brown* v. *Saucerman* (1957), 237 Ind. 598, 145 N. E. 2d 898, and *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 50 N. E. 2d 875, and that the opinion of the Appellate Court erroneously decided a new question of law in this: that the driving of an automobile at a sustained speed of 85 to 90 miles per hour under the attending circumstances in the case did not constitute wanton or wilful misconduct within the provisions of §47-1021, Burns' 1952 Repl. [Acts 1937, ch. 259, §1, p. 1229.] This court has accepted transfer on the grounds above stated.

Appellee suffered severe injury while riding in an automobile operated by appellant. Appellee's complaint for damages was in two paragraphs. In the first paragraph, appellee alleged he was a passenger-for-hire and that his injury occurred as a result of the negligent operation of the automobile of the appellant. The second paragraph alleged that appellee was a guest in the automobile and that the appellant drove such automobile in a wanton and wilful manner, resulting in the appellee's injury. The cause was submitted to a jury, which returned a verdict in favor of appellant on the first paragraph of complaint, and in favor of the appellee on the second paragraph. Damages were assessed in the sum of $25,000. This appeal followed.

The only error assigned and argued here on appeal, is that the verdict of the jury is not sustained by sufficient evidence.

The facts in evidence in support of the verdict are as follows: The appellant Buroker, the appellee Brown, and a third party, Bogart, were serving in the Armed Forces of the United States at Fort Knox. Sometime

prior to January 15, 1955, appellee and Bogart made arrangements with appellant to drive them to their home in Ohio.

At the time of the accident with which we are here concerned, appellant was driving his car, which was a 1953 Chevrolet, at a point about 60 miles northeast of Louisville, on Indiana State Road 3. All three of the young men were riding in the front seat. The accident occurred about 2:15 P. M. Appellee had been dozing most of the time but woke up when they were going through the town of Deputy, Indiana. There he looked at the speedometer which registered a speed of around 85 to 90 miles per hour. There is conflict in the evidence as to the speed. However, appellee's testimony is that the car was driven at the sustained speed of 85 to 90 miles per hour from the time he first noticed the speed to the place of collision which occurred about two miles beyond the town of Deputy.

According to appellant's own testimony, he was not familiar with the road and kept a close watch on both the speedometer and the road. The highway was "very winding" and although it had recently been resurfaced with blacktop, was "wavy" and not smooth and there was a drop-off at each edge of the pavement of from two to four inches at the berm. The pavement was generally dry, but there was ice and snow on bridges and shady places. Immediately prior to the collision appellant drove across a bridge and into a curve in the highway where, in appellant's words, "it seemed like it was a slick place." There the car first went off the pavement on the right side, then almost immediately it came back onto the pavement where it skidded sideways down the highway for about 300 feet.

Other witnesses testified that thereafter the car went off the pavement onto the berm of the left side of the

highway where it traveled about 140 feet, making deep tracks in the soft berm, before it went down a six to eight-foot embankment where it hit a utility pole which was about eight inches in diameter. It broke out a section of the pole about 10 feet in length, leaving the stump in the ground and the upper portion hanging to the wires to which it was attached. The car then traveled another 100 feet, carrying the section of the pole with it, turning over one or more times before it came to rest. The car was completely demolished.

. The question we must determine is whether the facts as set forth above are sufficient to sustain appellee's charge that appellant was guilty of wanton or wilful misconduct in the operation of the automobile. As cause for appeal from the adverse judgment, appellant relied primarily upon the decision of this court in the case of *Brown* v. *Saucerman, supra* (237 Ind. 598). In that case this court by an equally divided opinion on the issue of the applicability of the guest statute (§47-1021, *supra*) denied liability. Therefore the judgment of the trial court, which denied liability, was affirmed. Appellant asserts first that although the decision in the Saucerman case was by a divided court, the trial court in the case at bar was bound by the "prevailing opinion" of this court in the Saucerman case. And further, appellant asserts that the facts in the Saucerman case were much stronger in favor of the injured guest than they are in this case.

Appellant's argument is in error on both counts. As previously stated, this court in the Saucerman case was equally divided upon the issue as to whether or not the guest statute was applicable to the facts in that case. Therefore although the court, because of the equal division thereof, affirmed the judgment of the trial court, there is no prevailing precedent which can be

drawn from that case with regard to the application of the guest statute to the facts presented. Furthermore, we note that appellant here erroneously assumes that the alleged prevailing opinion in the Saucerman case rests upon the assumption that at the time of the collision the appellant in that case was driving at a speed of from 70 to 80 miles per hour and that this excessive speed was the proximate cause of the collision. However, the evidence regarding speed as recited in the Saucerman case is limited to that of an officer who examined the car the next day and merely estimated the speed of the car from the damage done to be "better than 65 miles per hour." In fact, the alleged prevailing opinion upon which appellant relies specifically states that the testimony regarding a speed of 75 to 80 miles per hour was of no probative value.[2]

Although the facts in the Saucerman case, *supra*, may have been such that there was a difference of opinion as to whether as a matter of law the driver of the car operated the same with conscious disregard for the safety of its occupants and thus required a reversal of the trial court which had denied liability, this is not true in the case before us. Here a verdict of liability was returned. The evidence in support of the verdict is that the driver drove the 1953 Chevrolet automobile for a distance of two miles before the collision at a sustained speed of 85 to 90 miles per hour over a wind-

2. "The only evidence that appellant was driving 75 to 80 miles per hour was the testimony of an attendant at the Drive-In—who, looking through the window on a dark night, while it was raining, watched the car go down the road toward Vincennes and as it left her vision, at more than one-half mile away, it was going at a 'terrific rate of speed,' which she estimated at 75 to 80 miles per hour. The accident occurred more than two miles on down the road from this point, or about three miles from the Drive-In. This, in our opinion, is not substantial evidence and under the circumstances as shown by the record it can have no probative value." *Brown* v. *Saucerman* (1957), 237 Ind. 598, 604, 145 N. E. 2d 898.

ing, wavy, blacktop highway with which he was not familiar and on which there were spots of ice on bridges and shady places, and a sharp drop-off on each side of the pavement, and that immediately before the wreck appellant drove the automobile at such unabated speed across a bridge and into a curve which was, from all the evidence, clearly apparent to him and upon which "it seemed like it was a slick place."

Next we examine the ruling precedent of this court as stated in the Saucerman case, *supra* (237 Ind. 598, 602, 607, 608), and the Bedwell case, *supra* (221 Ind. 600, 606-607), as applied to the facts in the case at bar. We quote with approval the rules and propositions of law set forth in the alleged prevailing opinion in the Saucerman case. In that case this court at page 602 stated the law as follows:

> " 'Willful or wanton misconduct consists of the conscious and intentonal doing of a wrongful act or omission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result.' (Citing authorities.)
>
> "The burden was upon appellee herein to show by a preponderance of the evidence that appellant was conscious of his conduct, '. . . and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries.' "

Also, at page 607 this court said:

> "We adopt the rule as stated by the Wyoming Supreme Court in *Meyer* v. *Culley, supra,* at page 94 of 241 P. 2d:
>
> 'While it is generally true that mere speed of itself does not constitute "wilful mis-conduct" yet

there may be a point at which the speed became so excessive that the danger of injury to a guest was probable at such extreme speed and that this might constitute "wilful misconduct." Needless to say the circumstances appearing in each case must rule this point.' "

Also, at page 608 this court stated:

"We recognize that 'When one by a continuous course of conduct seems to exercise no concern for others he may be both wilful and wanton.' *Kahan* v. *Wecksler* (1938), 104 Ind. App. 673, 678, 12 N. E. 2d 998, 1000.

. . . . .

"It is also true that 'acts such as exhibit a conscious indifference to consequences, make a case of constructive or legal wilfulness.' *Bedwell* v. *DeBolt, supra* (1943), 221 Ind. 600, 607, 50 N. E. 2d 875."

In the case of *Bedwell* v. *DeBolt, supra,* at pages 606-607, this court stated:

"The question then arises as to the meaning of the words 'wanton and wilful misconduct,' as used in the above act. On this phase of the case we find ourselves in complete agreement with what was said by Blessing, C. J., when this case was before the Appellate Court of Indiana (47 N. E. 2d 176). We, therefore, adopt as our own the following language employed by him:

'Blashfield has defined "wanton misconduct" as "the intentional or wanton disregard of the safety of others, and is manifested by conduct which is of such a character as to indicate the autoist's indifference to the consequences of his acts." The same author defines "wilful misconduct" as "the intentional doing of something which should not be done, or intentional failure to do something which should be done, in the operation of the automobile, under the circumstances tending to disclose the operator's knowledge, express or implied, that an injury to the guest will

be a probable result of such conduct." Blashfield, Cyc. of Automobile Law & Practice, Permanent Ed., Vol. 4, §2322, pp. 109 and 110.

· · · · ·

'In determining what constitutes a "wilful" or "wanton" act, we subscribe to the view that it is not necessary to prove that defendant deliberately intended to injure the plaintiff; it being sufficient if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the 'natural and probable consequences of his act was injury to the plaintiff. . . .' "

When we apply the ruling precedent of this court as stated in the above cited cases to the facts of this case, we cannot say as a matter of law that the speed at which the appellant was driving was not so extremely excessive under the attending circumstances; that injury to the occupants of the car was not a natural and probable consequence of appellant's intentional misconduct. In fact, such misconduct, if true, might reasonably have been considered as an invitation to catastrophe.

We therefore conclude that the facts here in evidence, together with a reasonable inference which may be drawn therefrom, are sufficient to sustain the verdict.

Judgment is therefore affirmed.

Bobbitt, C. J., Arterburn and Landis, JJ., concur.

Jackson, J., dissents with opinion.

## DISSENTING OPINION

JACKSON, J.—I can not agree with the majority opinion for the following reasons. The factual situations, preceding and at the time of the crash, are adequately discussed in the opinion of the Appellate Court in

*Buroker* v. *Brown* (1959), 159 N. E. 2d 140, hence need not be amplified here.

A review of the facts and the evidence reveals that the only paragraph of complaint upon which the verdict and judgment of the trial court could be sustained concerns the "wanton and wilful misconduct" exception to the guest statute. Acts 1937, ch. 259, §1, p. 1229, being §47-1021, Burns' 1952 Replacement.

The case of *Brown* v. *Saucerman* (1957), 237 Ind. 598, 145 N. E. 2d 898, laid down the rule that excessive speed alone is not a sufficient basis to justify a probable result in injury to a guest. It held that the factors combined with excessive speed are determinative in each case.

The following statement in 5A Am. Jur., §532, p. 565, adequately sums up the rule laid down in *Brown* v. *Saucerman, supra.*

> "In order that one may be held guilty of wilful or wanton conduct, it must be shown he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result."

The case at bar presents a paradoxical situation. Here were three persons riding in the front seat of a car traveling at a high rate of speed. Appellee has attempted to show a continuous course of conduct, he claims that upon becoming aware of his danger, there was no time to warn or admonish the driver of the danger, yet the crash occurred approximately two miles from the point at which appellee claims he first became aware of the danger. Objectively, the situation seems to be one where, either none of the occupants were

aware of their hazardous position, or that all of them, including appellee, acquiesced in it.

"Excessive speed alone does not constitute gross negligence, wilful or wanton misconduct, disregard of the safety of others, recklessness, or the like, but is a factor to be considered along with other circumstances in determining whether the driver was guilty of such conduct." 5A Am. Jur., §537, p. 569.

Under the circumstances here, it is difficult to see how the facts when tested objectively, can present a case of wilful and wanton misconduct.

The petition to transfer should be denied.

NOTE.—Reported in 172 N. E. 2d 849.