## WYATT v. THOMPSON, ETC. ET AL.

[No. 19,250. Filed May 23, 1961. Rehearing denied June 22, 1961. Transfer denied October 4, 1961.]

262

*Bredell, Cooper & Martin, C. Wendell Martin,* of Indianapolis, and *Claud D. Raber,* of Danville, for appellant.

*William M. Osborn, Bingham Summers & Spilman,* of counsel, both of Indianapolis, *Joe Stevenson,* and *Stevenson, Kendall & Stevenson,* of counsel, of Danville, for appellee Thompson.

RYAN, P. J.—This was an action brought by appellee Thompson against appellant Wyatt and appellee Disney for damages for personal injuries arising out of a collision between two automobiles on March 6, 1955. Plaintiff-appellee was a guest in the automobile driven by Shirley Cline, now Shirley Cline Wyatt. Appellee Thompson claimed damages from appellant Wyatt on account of her wanton and wilful misconduct, and he claimed damages from appellee Disney on account of his alleged negligence.

The issues were formed by appellee Thompson's complaint which, in Paragraph I thereof, alleges wanton and wilful misconduct on the part of appellant Wyatt, proximately causing personal injuries to appellee Thompson, said wanton and wilful misconduct so alleged as follows:

"(a) She failed and refused to heed the warnings given her to slow down the speed of the Wyatt automobile;

"(b) She drove the Wyatt automobile at an excessive rate of speed under the circumstances then and there existing as described above, namely, approximately 50 miles per hour immediately prior to the collision;

"(c) She failed to have and keep the Wyatt automobile under control so as to be able to bring it to a stop in order to avoid collision with others, including the automobile driven by defendant Disney;

"(d) She failed to keep and maintain a lookout for other persons and automobiles, including the automobile driven by defendant Disney; and

"(e) She failed and refused to drive the Wyatt automobile at an appropriate reduced speed in view of the special hazards existing by reason of weather and highway conditions."

Paragraph II of Thompson's complaint alleged negligence on the part of appellee Disney proximately causing personal injuries to appellee Thompson, said negligent acts so alleged being as follows:

"(a) He carelessly and negligently was driving at an excessive rate of speed under the circumstances stated above, namely, approximately 50 miles per hour;

"(b) He carelessly and negligently failed to keep and to maintain the automobile he was driving under control so as to be able to bring it to a stop in order to avoid collision with the Wyatt automobile;

"(c) He carelessly and negligently failed to keep and to maintain a lookout for other persons and other automobiles using the highway, including plaintiff and the automobile in which plaintiff was riding; and

"(d) He carelessly and negligently failed to change the course of or stop the automobile which he was driving in time to avoid collision with others, including plaintiff and Wyatt automobile."

Appellant Wyatt filed an answer in two paragraphs:

Paragraph I in compliance with Rule 1-3 of the Supreme Court, thereby denying the alleged wanton and wilful misconduct and injury.

Paragraph II in compliance with Rule 1-3 of the Supreme Court, pleading no information on the allegations of Paragraph II of the complaint.

Appellee Disney filed an answer in two paragraphs:

Paragraph I in compliance with Rule 1-3 of the Supreme Court, pleading no information concerning the allegations of Paragraph I of the complaint.

Paragraph II in compliance with Rule 1-3 of the Supreme Court, denying the alleged negligence and injury.

Trial was had by jury, which returned a verdict for the appellee Thompson in the sum of Twelve Thousand Five Hundred ($12,500.00) Dollars against the appellant Wyatt on Paragraph I of the complaint, and on Paragraph II of the complaint the jury returned a verdict against the appellee Thompson and in favor of appellee Disney. Consistent judgment was rendered on the verdict, and appellant assigns as error the overruling of her motion for a new trial.

It seems that on the night in question the appellant, who was a resident of Pittsboro, Indiana, had driven to Indianapolis with one Nancy Kaiser, and after drinking a 'coke' at a drive-in had returned to Pittsboro. In Pittsboro they attended a basketball tourney, where they met the appellee Thompson, Geraud Wyatt, Shirley Marsh and Anna Rudder. They then decided to return to Indianapolis to a drive-in restaurant to get something to eat. Approximately two or three miles east of Clermont, near the intersection of U.S. Highway 136 and High School Road, the car passed over a culvert, went into a slide, and collided with an automobile being driven westward on Highway 136 by the appellee Disney. At this point the highway is straight and level for approximately one-half mile on each side.

Appellee Thompson testified that as they left Pittsboro the appellant seemed to be starting out in a hurry and he remarked something like "We are not going to a fire." After this remark the appellant went on at the

usual driving speed between Brownsburg and Pittsboro. He further testified that somewhere between Brownsburg and Clermont Geraud Wyatt mentioned to appellant that he thought she was driving a little too fast for a wet road. Appellant did not change the speed of the automobile at that time. Again, after they passed Clermont, Wyatt told her that he thought that they were going a little too fast. He further testified that while it had snowed earlier in the evening, approximately 7:30 P.M., that the snow had melted on the road at the time they left the gymnasium in Pittsboro, although there were spots on the highway that were covered with snow. Also that for a March day it had been rather warm. Appellee further testified that from the time they left Pittsboro the car had not skidded until it reached the culvert, at which time the collision occurred. At the time the automobile started to slide, Geraud Wyatt, who was in the rear seat, attempted to grab the steering wheel, but the appellee was not sure whether or not he was successful in getting hold of the wheel. There was evidence that in passing through the towns en route to Indianapolis the appellant had slowed down and had obeyed all speed laws in such towns.

The appellee Disney testified that from one-half to three-quarters of a mile from the scene of the accident he noticed that the road was slick and at that particular point ice covered the highway at least on his side. He further testified that it was snowing at intervals, although it was not heavy enough for him to use his windshield wipers. It was his opinion that the appellant had passed some cars and gotten back into her own lane with plenty of clearance before the slide occurred. It was also his opinion that the appellant's automobile was being driven in the neighborhood of forty to fifty miles per hour.

Geraud Wyatt testified that there was a slight drizzle which was freezing and that the pavement was slick at the scene of the collision. He further testified that, he had requested the appellant to slow down about five minutes before the accident and she slowed from 60 miles per hour to 50 miles per hour at the time of the collision.

The question thus presented for determination is whether or not the factual situation is sufficient to sustain the appellee's charges that the appellant was guilty of wanton and wilful misconduct in the operation of the automobile.

Our Supreme Court has considered this problem in two very recent cases, that of *Buroker* v. *Brown* (1961), 241 Ind. 421, 172 N. E. 2d 849, and *Reynolds Admnx. etc.* v. *Langford* (1961), 241 Ind. 431, 172 N. E. 2d 867.

In the *Buroker* case, the appellant was driving over a winding blacktop road which, although recently resurfaced, was wavy and was not smooth. There was a drop-off at the edge of the pavement of from two to four inches at the berm, and the pavement itself, while generally dry, had some snow and ice on bridges and on shady places. The evidence also indicated that the appellant had been driving at a sustained speed of from 85 to 90 miles per hour. The court stated at page 851:

> "Next we examine the ruling precedent of this court as stated in the Saucerman case, supra (237 Ind. 598, 602, 607, 608, 145 N.E. 2d 898), and the Bedwell case, supra (221 Ind. 600, 606-7, 50 N.E. 2d 875), as applied to the facts in the case at bar. We quote with approval the rules and propositions of law set forth in the alleged prevailing opinion in the Saucerman case. In that case this court at page 602 of 237 Ind. at page 899 of 145 N.E. 2d stated the law as follows:

" ' "Willful or wanton misconduct consists of the conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result." Citing authorities.

" ' The burden was upon appellee herein to show by a preponderance of the evidence that appellant was conscious of his conduct, ". . . and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries." '

"Also, 237 Ind. at page 607, 145 N.E. 2d at page 901 this court said:

" ' We adopt the rule as stated by the Wyoming Supreme Court in Meyer v. Culley, supra, at page 94 of 241 P. 2d:

" ' "While it is generally true that mere speed of itself does not constitute 'wilful misconduct' yet there may be a point at which the speed became so excessive that the danger of injury to a guest was probable at such extreme speed and that this might constitute 'wilful mis-conduct.' Needless to say the circumstances appearing in each case must rule this point." '

"Also, 237 Ind. at 608, 145 N.E. 2d at page 902 this court stated:

" ' We recognize that "When one by a continuous course of conduct seems to exercise no concern for others he may be both wilful and wanton." Kahan v. Wecksler (1938), 104 Ind. App. 673, 678, 12 N.E. 2d 998, 1000.

.   .   .   .   .

" ' It is also true that "acts such as exhibit a conscious indifference to consequences, make a case of constructive or legal wilfullness." Bedwell v. DeBolt, supra (1943), 221 Ind. 600, 607, 50 N.E. 2d 875.'

"In the case of Bedwell v. DeBolt, supra, 221 Ind. at pages 606-607, 50 N.E. 2d at page 877, this court stated:

"'The question then arises as to the meaning of the words "wanton and wilful misconduct," as used in the above act. On this phase of the case we find ourselves in complete agreement with what was said by Blessing, C.J., when this case was before the Appellate Court of Indiana (47 N.E. 2d 176, 181). We, therefore, adopt as our own the following language employed by him:

"'"Blashfield has defined 'wanton misconduct' as 'the intentional or wanton disregard of the safety of others, and is manifested by conduct which is of such a character as to indicate the autoist's indifference to the consequences of his acts.' The same author defines 'wilful misconduct' as 'the intentional doing of something which should not be done, or intentional failure to do something which should be done, in the operation of the automobile, under the circumstances tending to disclose the operator's knowledge, express or implied, that an injury to the guest will be a probable result of such conduct.' Blashfield, Cyc. of Automobile Law & Practice, Permanent Ed., Vol. 4, §2322, pp. 109 and 110.

. . . . .

"'"In determining what constitutes a 'wilful' or 'wanton' act, we subscribe to the view that it is not necessary to prove that defendant deliberately intended to injure the plaintiff; it being sufficient if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequences of his act was injury to the plaintiff. . . .'''"

In applying such applicable principles of law, the court came to the conclusion on page 852:

". . . we cannot say as a matter of law that the speed at which the appellant was driving was not

so extremely excessive under the attending circumstances; that injury to the occupants of the car was not a natural and probable consequence of appellant's intentional misconduct. In fact, such misconduct, if true, might reasonably have been considered as an invitation to catastrophe."

In the *Reynolds* case, the driver entered into State Road 67 from the south at a speed of 50 or 60 miles an hour without stopping for a stop sign, and collided with a truck that was being driven west on State Road 67. Lights were burning on both the truck and the automobile, and it was drizzling rain at the time. The approach to the intersection from the south was clear and unobstructed to the east. The accident in this case occurred at about 11:25 P.M.

The appellee had stated to the investigating sergeant of the Indiana State Police that while he knew there was a stop sign at the intersection he did not see it and didn't realize he was in the intersection until it was too late. The court stated on page 870:

"In Becker v. Strater, 1947, 117 Ind. App. 504, 72 N.E. 2d 580, 581, the trial court directed a verdict for the defendant at the close of the plaintiff's evidence, and the Appellate Court affirmed. In that case both appellant and appellee were familiar with the intersection. As appellee - Strater approached the intersection he slowed his car to about 15 or 20 miles per hour, and did not bring his car to a stop, but 'stepped on the gas' and started across the intersection without looking to his right.

"In considering whether the evidence was sufficient to establish willful or wanton misconduct, the Appellate Court at page 507 of 117 Ind. App., at page 581 of 72 N.E. 2d said:

" 'When he reached the intersection he failed to look to his right and he failed to stop. A jury could properly find either of these acts to constitute negligence. But could they properly find

either or both acts to constitute willful or wanton misconduct? We think not. Mere negligence is not sufficient. The violation of a statute does not necessarily constitute willful or wanton misconduct.

" 'There was nothing about appellee's conduct suggesting reckless abandon. He did not rush into the intersection knowing that other cars were approaching. All the evidence is to the effect that he had no knowledge of the approach of the automobile which struck him. He was not warned either by others or by his own senses.

" 'Applying the definition of willful or wanton misconduct above set forth, we think it cannot be said that, with knowledge of existing conditions, appellee persisted with reckless indifference to consequences in a course which he knew would probably result in injury to his guest.'

"The rule as to what is necessary to show 'willful or wanton' misconduct is succinctly stated in Bedwell v. DeBolt, supra, 1943, 221 Ind. 660, at page 607, 50 N.E. 2d 875, at page 878, as follows:

" 'To hold one guilty of "wilful" or "wanton" conduct, it must be shown that he was conscious of his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries.'

"In Sausaman v. Leininger, 1958, 237 Ind. 508, 514, 146 N.E. 2d 414, 418, this court added,

" 'We concur in the fact that to constitute "willful or wanton misconduct" there must be a "perverse motive," in that the misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom.' "

and then went on to say at page 870:

"From the evidence in the record here we are unable to say that appellee consciously and with knowledge that the truck was approaching, inten-

tionally and with reckless indifference to the consequences, drove into the intersection herein knowing that if he did so injury to his passenger would probably result.

"While the evidence here might sustain a charge of negligence, there is, however, a total absence of evidence or legitimate inference in favor of plaintiff-appellant upon the issue of willful or wanton misconduct. The trial court, therefore, properly gave the jury a peremptory instruction to find for the defendant-appellee at the close of the plaintiff's evidence."

It may seem difficult to decipher any guiding rule as to what constitutes wanton and wilful misconduct within the meaning of the Guest Statute of this state, Burns' 1952 Replacement §47-1021, but it seems to us as we interpret the principles enunciated by our Supreme Court in the foregoing cases, that from the evidence and record before us, the appellant did not proceed consciously with reckless indifference to the consequences and with knowledge that injury would probably result from her course of conduct.

Judgment reversed, with instructions to sustain appellant's motion for a new trial as to appellee Thompson, and for further proceedings in accordance with this opinion.

Ax, J., Cooper, J., and Myers, J., concur.

NOTE.—Reported in 175 N.E. 2d 44. Transfer denied. Landis, C. J., in which Jackson, J., dissents.