## BURKE v. BURKE.

[No. 19,669. Filed June 28, 1963. Rehearing denied August 12, 1963. Transfer denied October 9, 1963.]

236

*Charles C. Campbell,* of Rochester, and *Kizer & Neu,* of Plymouth, for appellant.

*Hillis & Hillis, John T. Hillis, Robert C. Hillis, Tom F. Hirschauer,* all of Logansport, and *Brown & Brown* of Rochester, for appellee.

HUNTER, J.—This appeal is brought by appellant (plaintiff below) questioning the trial court's action in directing a verdict for the appellee (defendant below) and the court's judgment duly entered in accordance with said verdict.

The appellant was the father of a fifteen (15) year old boy who was killed while riding in a car driven by the appellee as a result of a head-on collision with a truck being driven by a third party. This action was brought under the guest statute and the appellant alleged the appellee was liable for wilful or wanton misconduct.

By the provisions of Acts of 1937, ch. 259, §1, p. 1229, being §47-1021, Burns' 1952 Replacement, it is provided that the owner or operator of a motor vehicle shall not be liable for loss or damage arising from injuries to, or death of, a guest unless such injuries or

death are caused by the wanton or wilful misconduct of such operator, owner or person responsible for the operation of such motor vehicle.

The motion for directed verdict was sustained at the close of the plaintiff's evidence. Appellant asserts that there was substantial evidence or reasonable inferences that could be drawn therefrom supporting each material allegation essential to recovery and therefore it was error for the trial court to sustain the motion for a directed verdict citing *Miller etc.* v. *Smith* (1955), 125 Ind. App. 293, 124 N. E. 2d 874; *Bradford* v. *Chism* (1963), 134 Ind. App. 501, 186 N. E. 2d 432, 1 Ind. Dec. 21. This is a correct statement of the rule and is applicable *if* the scope and nature of the evidence warrants the conclusion.

Hence, our duty is to review the evidence most favorable to the appellant to determine whether there was substantial evidence of probative value or reasonable inferences to be drawn therefrom to sustain the appellant's cause of action. In doing so we must draw against the party requesting a peremptory instruction, all inferences which the jury might reasonably draw. *Johnson* v. *Estate of Gaugh et al.* (1955), 125 Ind. App. 510, 124 N. E. 2d 704; *Bradford* v. *Chism, supra.*

In viewing the evidence most favorable to the appellant, the record indicates that the only evidence presented by the plaintiff of the defendant's conduct at the time of the collision was given by Raleigh Sellers, the driver of the truck involved.

The pertinent portions of Sellers' testimony are as follows:

"Q. And at about what speed were you driving?

A. Between forty and forty-five miles an hour."
(Transcript p. 94, lines 10-11)

"Q. As you were coming from the south, going north, towards the point where the collision eventually occurred, did you see any other vehicles on the highway?
A. Yes, sir.
Q. And what vehicle or vehicles did you see?
A. I seen this car coming that I crashed with.
Q. Now, when you first saw that car how far away would you say you were from the car which you eventually collided with?"
(Transcript p. 95, lines 20-27)

"A. That is pretty hard to answer.
Q. Well, let's put it this way. How far was the car approximately from you when you now have any recollection of having that car brought to your attention?
A. *It could vary so much. I would hate to answer that. It could have been 70 rods, it could have been a little farther, it could have been a little closer.*
Q. When you first saw it?
A. *Yes. Anything that I say on that would be merely a—*
Q. Well, we know, Mr. Sellers, that you didn't—
A. It was quite a distance.
Q. —make any measurements or anything?
A. I did not, and if I would try to, *I wouldn't know where to commence measuring from the point that I first saw it.*
Q. Could you estimate how fast it was going at the time you first saw it?
A. No. Nobody could make that kind of a statement.
Q. That's right, coming towards you?
A. You couldn't do it."
(Transcript p. 96, lines 1-19)

Another witness was brought in out of order and the rest of Sellers' testimony was given the next day:

"Q. Now, could you tell the Jury, Mr. Sellers, how far you were away from the point where the accident happened at the time that you first observed this car coming from the north?

A. It would have been—*this is going to be an approximate figure—it would be approximately in the neighborhood of 20 rods when I first observed the car coming toward me.*

Q. And where on the highway would you say you were in relation to the contour of any hill or dip, or anything of that kind, if you remember?

A. I was at the foot of the dip.

Q. That would be the south edge of it?

A. Yes, the south edge of it. I was in the approximate vicinity of the foot of that dip when I observed this car coming down slope the other way.

Q. Now, can you tell the Jury how far, in your opinion, that car was from the point of impact when you first saw it?

A. *This is going to be an approximate figure also. It would be approximately in the neighborhood of 30 to 35 rods from the point of impact when I first observed the car.*

Q. Now, when you first observed this other car, will you tell the jury where it was on the highway—the position of it on the highway?

A. When I first observed this car, it had come around this jog and the front wheels or the wheels of the car, it would be the left wheels were *across the center line just a little bit.*

Q. Then what did you do after that?

A. After that, I progressed as usual, *it wasn't anything alarming to me.*

Q. What did you do in relation to the driving of your truck—where did you drive it?

A. I kept my position as close to the right-hand side as was reasonable, I would say, and *kept my attention focused to my side of the highway* because of watching where I was going there.

Q. And when next did you see this car to be conscious of it?

A. The next observation, if you would call it an observation, was just a blur and a crash actually." (Transcript p. 101, lines 20-27, p. 102 lines 1-27 and p. 103, lines 1-5) (our emphasis)

The only other evidence on the subject was given by a secretary of one of appellant's attorneys who stated that the appellee said

"The accident happened like the State Police said. I cannot say about that. When you have a car sliding there is not much you can do."[1]
(Transcript p. 71, lines 24-26)

and

"There was a lot of rumors got around. Some reported that I was coming down the middle of the highway and ran into him. He had a whole field to cross and could have avoided me. I never did hear his report of that."
(Transcript p. 73, lines 14-17)

Appellant's theory is that the defendant drove his car on the left side of the highway for some 750 feet at a speed of sixty or seventy miles per hour. Whether or not this is wanton or wilful misconduct we do not have to decide.

Appellant attempts to show that since it took Sellers the same time to go 20 rods as it took the appellee to go 30-35 rods and Sellers was traveling at 40-45 mph, the defendant must have been traveling at 60-70 mph. This is an ingenious method in which to establish the speed would it not be for the nature of the vagueness of distances estimated by the witness.

Not only does the witness contradict himself as to the total distance between the two automobiles when he

---

1. There was no State Police report in the record; neither was there any testimony by a State Trooper.

first saw the defendant's car, but his testimony is replete with continual protests against having to make estimates of the various distances when he wasn't sure of such distances. Appellant would then have us take these extremely indefinite guesses and apply them to a precise mathematical formula to determine the appellee's speed at the time of the collision.

The material allegations of appellant's complaint essential to recovery must be supported by "substantial" evidence as differentiated from a mere "scintilla". *Sylvester* v. *State* (1933), 205 Ind. 628, 187 N. E. 669; *McCague* v. *N. Y. C. & St. L. R. Co.* (1947), 225 Ind. 83, 71 N. E. 2d 569.

Substantial evidence has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McCague* v. *N. Y. C. & St. L. R. Co., supra; Marzacco* v. *Lowe* (1945), 58 F. Supp. 900 (D. C. N. J.)

While great restraint is placed upon the trial courts in denying submission of a cause brought in good faith involving far reaching and serious consequences to the complaining party, *Garr* v. *Blissmer et al.* (1961), 132 Ind. App. 635, 177 N. E. 2d 913; *Cochran* v. *Town of Shirley* (1909), 43 Ind. App. 453, 87 N. E. 993, and, "the law very zealously protects one against whom a motion for a directed verdict is addressed," *Estes* v. *Anderson Oil Co.* (1931), 93 Ind. App. 365, 176 N. E. 560. Nevertheless such rules should never be utilized to allow a cause to go to a jury where a determination of rights of the parties involves mere conjecture or speculation and upon which such determination would be premised. *Johnson* v. *Brady* (1915), 60 Ind. App. 556, 109 N. E. 230; *Pittsburgh, etc., R. Co.* v. *Vance* (1915), 58 Ind. App. 1, 108 N. E. 158.

There is also some authority to the effect that a directed verdict for the defendant is proper when the plaintiff's only evidence on a material allegation essential to recovery is a statement of one of its witnesses that is in conflict with other statements of that same witness made in the trial of the cause. *Lemans* v. *Wiley* (1884), 92 Ind. 436.

Appellant argues that since the witness first saw the appellee's car as the "left wheels were across the center lane just a little bit" and thereafter the vehicles collided on the left side of the highway, a reasonable inference can be made that the car traveled the whole distance from the time the witness first saw the car until the collision, on the left side of the highway. Appellant then argues that he has established wanton or wilful misconduct because a reasonable inference might be drawn to the effect that a person who would drive 750 feet on the left side of the highway must have done so with reckless abandon. This argument is met by the fact that the evidence attempting to establish the appellee's driving 750 feet on the left side of the road is at best uncertain. It is not proper to base an inference on such uncertain or speculative evidence. *Todd* v. *State* (1951), 230 Ind. 85, 101 N. E. 2d 922; *Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445; *Kestler* v. *State* (1949), 227 Ind. 274, 85 N. E. 2d 76; *Orey* v. *Mutual Life Insurance Co. of N. Y.* (1939), 215 Ind. 305, 19 N. E. 2d 547; *Ward Bros. Co., Inc.* v. *Zimmerman, Admx.* (1932), 94 Ind. App. 130, 180 N. E. 25, and cases cited.

At best, the above quoted evidence, although exposing much conflict and indefiniteness in the essential and material particulars thereof, could do no more, if believed by the trier of the fact, than to portray an issue of negligence. It would be difficult to

even imagine how such evidence could afford a reasonable inference that the appellee was then guilty of "wanton or wilful misconduct" within the meaning of the "guest statute." *Sausaman* v. *Leininger* (1957), 237 Ind. 508, 146 N. E. 2d 414; *Brown* v. *Saucerman* (1957), 237 Ind. 598, 145 N. E. 2d 898; *Wyatt* v. *Thompson, etc. et al.* (1961), 132 Ind. App. 261, 175 N. E. 2d 44; *Becker* v. *Strater* (1947), 117 Ind. App. 504, 72 N. E. 2d 580.

The appellant produced no evidence to show "the conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to consequences," *Becker* v. *Strater, supra.* Nor would driving on the left side of the road for 750 feet if such were a fact, in and of itself imply such a course of misconduct. This conduct could not imply a reckless abandon or indifference to the consequences when there is no evidence of appellee's intent or of any other misconduct. *Becker* v. *Strater, supra; Wyatt* v. *Thompson, etc. et al., supra,* and cases cited.

Under any view of the evidence as detailed herein, we believe that the appellant has failed to meet the minimum standards of the "substantial evidence" rule. Thus, appellant's argument is of no avail and having failed to establish wanton or wilful misconduct, he must fail in his cause of action and the lower court was correct in directing a verdict for the defendant.

It is important to note that this case is rather unique as not only did the witness protest that he could not make accurate estimates of the various distances involved but also the conflicting statements were made on direct examination of the witness by the plaintiff's own attorney and there was no effort made by the plaintiff to clarify the matter.

Affirmed.

Mote, C. J., Kelley and Pfaff, JJ., concur.

NOTE.—Reported in 191 N. E. 2d 530.