GARNAL SCOTT *v.* DONALD KRUEGER ET AL.

[No. 471 A 59. Filed March 28, 1972. Rehearing denied April 28, 1972. Transfer denied November 1, 1972.]

480

*Joseph T. Bumbleburg, John K. McBride,* of Lafayette, *Geoffrey Segar,* of Indianapolis, for appellant.

*John F. Townsend, Jr., Townsend, Hovde & Townsend,* of counsel, of Indianapolis, for appellee.

LOWDERMILK, J.—This appeal comes to us as the result of a suit by Donald Krueger against Garnal Scott and Ruben Rodriguez, co-defendants, for personal injuries sustained by the plaintiff, Krueger, and for which the jury returned its verdict in his favor in the amount of $80,000 against the defendants, jointly and severally.

Defendant-appellant Scott has not troubled himself to set out in his brief an adequate statement of facts of the case, except that he does state therein that the plaintiff-appellee recovered a judgment in the amount of $80,000; following the return of the jury's verdict defendant-appellant Scott learned for the first time that plaintiff-appellee and Scott's co-defendant, appellee, Ruben Rodriguez, had made an agreement between themselves for the disposition of the lawsuit between them for a consideration of $9,000. This agreement was made between Krueger and Rodriguez on July 2, 1970, after the cause had been submitted to the jury and while the jury was deliberating the case. The agreement between Krueger and defendant-appellee Rodriguez was for the disposition of Krueger's claim against Rodriguez and was subsequently reduced to writing and designated a "Covenant Not to Execute."

Appellee Krueger, in his brief, admits appellant Scott's Statement of the Issues Presented for Review are substantially correct.

Defendant-appellant Scott did not set out a Statement of the Facts; however, plaintiff-appellee Krueger has done so

in his brief. Krueger contends therein that appellant Scott's Statement of the Facts is incomplete, misleading, argumentative and contains statements at variance with the evidence, especially concerning the Covenant Not to Execute.

He further says that Scott's statement that "an agreement has been made between Donald Krueger and Ruben Rodriguez for disposition of the lawsuit between them for a consideration of $9,000" which agreement was made at a time "when the jury was deliberating with respect to the rendering of their verdict in this cause" is a wholly inaccurate and incomplete description of the transactions which occurred between Krueger and Rodriguez.

In defendant-appellant Scott's reply brief he charges that appellee Krueger's statement of the case and statement of the facts set forth many facts irrelevant to the issues presented on appeal and are filled with conclusions with respect to the record, rather than the record itself. However, he contents himself to say "Since they are irrelevant defendant Garnal Scott will not deal further with such statements."

This court disagrees with appellant Scott in his stating that the statement of facts is irrelevant to an appeal, as the Supreme Court Rule expressly provides for the same and they are very material to an appeal. We shall, therefore, take the statement of facts from appellee Krueger's brief as being true, since appellant Scott has not objected to their accuracy in his reply brief, but has only contended many facts set out in the answer brief are irrelevant to the issues presented on appeal.

The parties hereto have given but very little consideration to the facts of the occurrence in question which resulted in appellee Krueger's injuries and the material issues argued are:

1. The trial court's forcing Garnal Scott to answer interrogatories propounded by plaintiff-appellee Krueger over

Scott's objections as to liability insurance and liability insurance limits;

2. Instructions given the jury to which written objections were timely made, and

3. The agreement referred to herein as "Covenant Not to Execute" entered into by and between Krueger and Rodriguez during the jury's deliberations.

The facts are, briefly, that on the night of October 8, 1967, between 7:30 and 8:00 o'clock P.M., the plaintiff-appellee Krueger was riding his motorcycle north on State Road 43, a two-lane, blacktop highway, about .9 mile south of Lafayette, Indiana, when he collided with appellant Scott's automobile. Scott had, some twenty to thirty minutes previously, been involved in a collision with appellee Rodriguez's automobile, having struck the rear of the Rodriguez car as Rodriguez was attempting to turn into a driveway and had stopped, with the rear of his automobile out in the northbound driving lane. Scott's car, after striking the same, swung around and was setting cross-ways of both driving lanes of Road 43.

It was a dark, misty night and visibility was limited. Just south of the accident scene there is a rise that obscures the spot where the accident occurred from the view of northbound traffic until the northbound traffic is almost upon the location. (The words "almost upon" was the only distance we were able to secure from the briefs.)

The parties involved in the first collision made no effort to remove either of the automobiles from the highway, although Scott had four red flares in his car, one of which he lighted, and put it out at the road some 20 to 30 feet from the stalled vehicles, and which shortly thereafter went out. Neither of the parties attempted to light and set out another flare or any other warning for others lawfully using the highway.

Appellee Krueger's motorcycle ran into the Scott vehicle, throwing Krueger into the air, where he landed on the pave-

ment as the result of which he sustained several injuries to his person, including broken bones and permanent brain damages which caused him to incur medical and hospital expenses, as well as loss of income.

The first alleged error which defendant-appellant Scott argues in his brief is that during the pre-trial proceedings Krueger filed interrogatories directed to both defendants. Interrogatories propounded by plaintiff Krueger to defendant Scott included interrogatories relating to (1) whether or not the defendant at the time of the accident had a public liability insurance coverage on the automobile involved in the accident; (2) the name of the policy, its number and general information relating thereto, and (3) whether or not there was collision insurance in effect at the time of the accident on the vehicles involved in the accident. Defendant-appellant Scott objected to all of these interrogatories and their sub-parts on the ground that it was immaterial, irrelevant and did not seek to expose the existence of books, documents or other tangible items or the identity of persons.

Defendant-appellant cites the case of *Bisserier* v. *Manning* (DC NJ 1962), 207 F. Supp. 476, and other cases for authority supporting his objection.

This court takes judicial notice of the fact that the case at bar was tried before Trial Rule 26 (B) (4) was adopted. However, in view of Trial Rule 16 (C) (5) and Trial Rule 26 (B) (4) and 13 A. L. R. 3rd 822, and the citation of authorities therein indicating numerous states which have adopted just the opposite result that the defendant-appellant contends and his cited cases support, we cannot agree that it was error for the court to compel defendant-appellant to divulge the name and extent of his insurance coverage, if any.

TR. Rule 16—Pre-Trial Procedure; Formulating Issues * * * (C) Conference of attorneys. * * *, Section 5, provides as follows:

"(5) Discuss Settlement. The possibility of compromise settlement shall be fully discussed and explored."

This rule was in effect in Indiana at the time the case at bar was tried.

Thereafter, under our Rules of Trial Procedure—Depositions and Discovery—TR. Rule 26 provides methods of discovery and (B) (4) thereof reads as follows:

"(4) Insurance agreements. A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this paragraph, an application for insurance shall not be treated as part of an insurance agreement. Added eff. March 1, 1971."

Our Supreme Court saw fit to augment the rules of discovery and provide that a defendant or defendants must disclose the existence and contents of an insurance agreement under which a person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment is required to give the amount of insurance coverage, the name of the carrier, et cetera.

This additional provision of "discovery" was to further enable litigants to know the amount of coverage of an insurance policy so that they would better know and the trial court would better know of the possibility of a settlement to avoid further litigation. The Rule itself provided that any information concerning the insurance agreement is not, because of its disclosure, admissible in evidence at trial.

This court can readily see and understand that attorneys can better evaluate a lawsuit when they know the worth of

the defendant, including insurance coverage, and what they may expect to recover in the event they are successful in the trial against such defendant.

It stands to reason that if an insured who is a defendant has only the minimum coverage required under our Indiana statute and has no other property on which an execution can be run and has no expectancy from an inheritance, et cetera, that a plaintiff involved in such litigation is better off financially to settle within the policy limits and go his way, even though the liability may be clear and the injury may be worth many more times than the amount of the coverage. This, we believe, was the reason for adding deposition and discovery rule to the pre-trial procedure formulating the issues, which discovery rule became effective March 1, 1971.

This rule saves much of the court's time in trying a lawsuit where a judgment could never be fully paid and saves trial expense to the taxpayers generally, avoids the inconvenience that necessarily arises to witnesses who are forced to attend trial and saves the injured party, in many instances, large sums of money for expert witnesses to make a case where the parties know or have reason to believe that they will never be able to recover more than they can agree upon by knowing the amount of the insurance coverage.

For the reasons above given we are of the opinion that defendant-appellant Scott was not prejudiced by the interrogatories he was forced to answer.

The second question saved in defendant-appellant Scott's motion to correct errors pertained to plaintiff-appellee's tendered instructions numbered 4, 6, 8, 9 and 10, which the court indicated it would give to the jury and to each of which defendant-appellant Scott timely filed written objections.

Plaintiff-appellee's tendered Instruction No. 4, together with written objections made thereto, reads as follows, to-wit:

"It is the law that the driver of a vehicle who is on a highway has a right to rely upon the rule that other persons using the public highways will obey the laws until he has reasonable cause for a notice to the contrary. The driver of a vehicle on a public highway is not bound to anticipate that others will fail to exercise reasonable care, or will conduct themselves in a negligent manner. Therefore, you are instructed if you find that Donald Krueger was operating his vehicle with reasonable care at the time of the accident, he had a right to assume that each of the defendants would obey all traffic laws and would exercise reasonable care at all times while on the public highway and Mr. Krueger cannot be found negligent for relying upon that assumption."

Defendant-appellant's objection:

"The defendant Garnal Scott respectfully objects to the giving of plaintiff's instruction No. 4 on the basis that the instruction states that Mr. Krueger cannot be found negligent for relying upon the assumption in that the instruction ignores the fact that an individual has a duty to see and to observe the highway before him and has a duty to act as a reasonably prudent man would act, and the question of whether or not the plaintiff Donald Krueger was acting as a reasonably prudent man, is one for the jury to determine. Therefore, this instruction further invades the province of the jury.

"And further the enclosure in said instruction of 'and Mr. Krueger cannot be found negligent for relying upon that assumption', constitutes an erroneous statement of the plaintiff's duty herein in that it does not properly advise the jury in the use of this assumption and its part in reliance and in determining what reasonable care might be. The quoted language also constitutes a mandatory direction that if Mr. Krueger relied upon the assumption, he cannot be found guilty, all of which constitutes error as a matter of law in the analysis of his duty."

Defendant-appellant Scott, in his brief, says that tendered Instruction No. 4 was erroneous in that it misled the jury by purporting to detail a presumed right of a driver without also detailing the corresponding and inescapable duties associated

with such right. The specifically objectionable portion of such instruction is the *last sentence*. The last sentence of tendered Instruction No. 4 tells the jury that if they find that Krueger was operating his vehicle with reasonable care at the time of the accident then he had the right to assume that each of the defendants would obey all the traffic laws and would exercise reasonable care at all times while on the public highway and Mr. Krueger could not be found negligent for relying on that assumption. We cannot agree with appellant Scott's further argument that the said instruction erroneously left an impression that if the plaintiff assumed all others on the road would obey traffic laws "he can't be found negligent for relying on that assumption." The instruction itself did tell the jury that Krueger had to operate his vehicle with reasonable care at the time of the accident and although we do not agree with appellant that this is an erroneous instruction we call attention to the fact that the court next gave appellant Scott's instruction to the jury, which would have cured any error had there been error and which instruction reads as follows:

"You are instructed that plaintiff Donald Krueger had a duty to see, hear or otherwise observe for his own protection, those things one could see, hear or otherwise observe by the use of ordinary and reasonable care under the same or similar circumstances and further that the law attaches the same legal consequences for not seeing, hearing or otherwise observing as it does if in fact one did see, hear or otherwise observe but did not act prudently."

It being the law that all instructions are construed together, we are of the opinion that the jury was not misled by this instruction.

We are of the further opinion that said instruction was not mandatory; however, we will not go into this at great length since the appellant has failed to cite any authority in his brief on this contention and thereby waives the same.

This court dealt at length with the rule on mandatory instructions in *Cato* v. *Fine* (1971), 149 Ind. App. 163, 271 N. E. 2d 146, and determined a mandatory instruction has been held to be when the instruction assumes to set out all of the elements essential to a recovery and directs the jury to find for the plaintiff. When this happens, *all* the elements for recovery must be set out or it is an erroneous instruction and cannot be cured by another instruction which is given. That case further quotes from the case of *Perry* v. *Goss* (1970), 253 Ind. 603, 255 N. E. 2d 923, wherein Chief Justice Arterburn wrote a concise and scholarly opinion distinguishing a mandatory instruction from a general instruction which did not set up a detailed factual situation and then instructed the jury they must come to a certain result, either for or against the plaintiff.

Tendered Instruction No. 4, in our opinion, is not to be condemned on the ground that it falls within the category known as "mandatory instructions" and which attempted to set out detailed factual situations.

Appellant Scott, in his brief, further states that the instruction is internally inconsistent and upon that basis alone would constitute error. He cites two cases in his brief on this point. However, in his objections to the instruction tendered to the court before the instruction was given he failed to state that the instruction was internally inconsistent and therefore waived any error, if such were error, and cannot now raise the same for the first time in this court.

Rule TR. 51 and Rule AP. 8.3 (A) Brief of the Appellant — (7) :

". . . The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and part of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."

The next instruction to which defendant-appellant objects is plaintiff's tendered Instruction No. 6. Said tendered instruction and the objection made thereto are as follows, to-wit:

"Where one is confronted with a sudden emergency, without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if he exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency, he is not negligently contributing to an injury resulting from his conduct, even though another course of conduct would have been more judicious or safe or might even have avoided the injury."

Defendant-appellant's objection was:

"The defendant Garnal Scott respectfully objects to the giving of plaintiff's instruction No. 6 on the basis that the same invades the province of the jury in that it assumes that a sudden emergency situation existed in this case when this is a question of fact and for the jury to determine. There being no evidence of a nature to be characterized as sudden, this instruction constitutes a mandatory direction upon the jury to find that the situation which confronted plaintiff was in fact sudden, which fact is not supported by the evidence."

The objections to Instruction No. 6 as set out in defendant-appellant's brief are that the factual elements necessary for the application of the doctrine of sudden peril or sudden emergency are: (1) that the appearance of danger or peril was so imminent that he had no time for deliberation; (2) *that the situation relied upon to excuse any failure to exercise legal care was not created by his own negligence;* (3) that his conduct under the circumstances was such as the law requires of an ordinarily prudent man under like or similar circumstances. He supports his contention by the case of *Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 247, 132 N. E. 2d 919, 924.

The further contention is that the instruction wholly fails to define the circumstances under which sudden emergency

exists as a matter of law and that the first sentence of the instruction virtually instructs the jury that the plainiff was confronted with a sudden emergency.

His next contention is that this is a highly contested factual issue in this case and the presence of such a strongly suggestive sentence was highly prejudicial to defendant's position.

He further complains that plaintiff's tendered Instruction No. 6 as given nowhere advised the jury that for the doctrine of sudden emergency to apply that the appearance of danger or peril must have been so imminent that the plaintiff had no time for deliberation. He further objected that nowhere in the instruction was the jury advised that such circumstances, *if they found them to exist, must not have been created in any manner by the plaintiff's own negligence.* On this contention he cites *Taylor v. Fitzpatrick, supra* and *Redd v. Indianapolis Rys.* (1951), 121 Ind. App. 472, 97 N. E. 2d 501.

In the case of *Redd v. Indianapolis Rys., supra,* the court said:

> "If the law demands refusal of such an Instruction it necessarily follows that the giving of it constitutes error."

He further contends that tendered Instruction No. 6 is mandatory and that it mandates the jury to exculpate the plaintiff from the normal standard of care required of any plaintiff under the doctrine of sudden emergency by the language "he is not negligently contributing to an injury resulting from his conduct" while, at the same time, the instruction effectively eliminates from the jury's consideration the contested factual issue of whether or not a sudden emergency in fact existed which was not created or contributed to by the plaintiff's own negligence.

Plaintiff's tendered Instruction No. 6 is, without doubt, an erroneous instruction for the reason that it does not contain

the necessary elements which an instruction on sudden peril or sudden emergency must contain as set out in the case of *Taylor* v. *Fitzpatrick, supra.* However, defendant-appellant Scott did not make such objection in writing after the instruction was submitted and before it was read to the jury. A part of his objection timely made was that the said instruction was mandatory. We cannot agree that said instruction was mandatory and cite as authority our reasons hereinbefore given as to plaintiff's tendered Instruction No. 4 on the mandatory provision thereof. The trial court was entitled to have the specific errors in the tendered instruction set out by the defendant-appellant so that the trial court could make corrections in the instruction before submitting it to the jury, if it were erroneous. We find that none of the objections set out in the brief were tendered in writing to the trial court or dictated to the reporter before the submission of the instruction to the jury except for the aforesaid reason that the instruction was mandatory.

Appellant Scott failed to save his record at the proper time, namely: before the instructions were settled by putting his specific objections in writing or dictating them to the reporter in the presence of the judge and all before the submission of the final instructions to the jury. Although the instruction was clearly erroneous, as we have heretofore stated, no question except that of the instruction being mandatory was saved by appellant Scott and this court must necessarily determine that the defendant-appellant Scott waived any error by failure to save his question at the proper time and in the proper manner. TR. Rule 51; AP. Rule 8.3 (A) (5) (7).

Defendant-appellant Scott's objection to sudden peril or sudden emergency made during the trial related to the admission of the evidence in the trial court. Inasmuch as appellant has failed to set out a statement of the facts in this case,

as they relate to plaintiff's tendered Instruction No. 6, accordingly appellant Scott has waived any error predicated on what the facts of the case may or may not show. TR. Rule 51; AP. Rule 8.3 (A) (5) (7). *Foster* v. *Pruett* (1938), 105 Ind. App. 367, 15 N. E. 2d 121; *Glenn* v. *Thatcher Glass Mfg. Co.* (1965), 139 Ind. App. 302, 209 N. E. 2d 900; *Lutz* v. *Goldblatt* (1967), 140 Ind. App. 678, 225 N. E. 2d 843.

Defendant-appellant Scott next objects to plaintiff's tendered Instruction No. 8, which instruction and written objection thereto read as follows:

"One who travels a public highway is not charged with the duty of seeing every dangerous obstruction, and stopping before coming in contact with it, upon penalty of being chargeable with contributory negligence. A traveler upon a highway regularly used by the public has a right to assume that the way is reasonably safe for ordinary travel. A traveller on the public highway is not required to anticipate extraordinary hazards, not to constantly expect and search for unusual dangers. Day or night, a traveller on the highway is charged with the duty of exercising only ordinary care to observe dangers and obstructions, and is only chargeable with notice of obstructions that a person of ordinary prudence would be reasonably expected to observe."

Defendant-appellant's objection was:

"The defendant Garnal Scott respectfully objects to the giving of plaintiff's instruction No. 8 on the basis that the same is repetitious of instruction No. 6 and instruction No. 4, and on the further basis that the instruction assumes that the defendant Ruben Rodriguez's automobile was in the main traveled portion of the highway at the time the collision occurred when as a matter of fact there is conflicting evidence on this point, and this question is one for the jury. Therefore, this instruction invades the province of the jury. This instruction further considers the matter of extraordinary hazards and unusual dangers. Neither of which concepts are supported by the evidence herein. It also does not state as a matter of law the correct standard of contributory negligence which would be applied to the plaintiff herein."

The written objections are (1) the instruction assumes the defendant Rodriguez's automobile was in the main traveled portion of the highway at the time the collision occurred, when, as a matter of fact, there is conflicting evidence on this point, which makes it a question of fact for the jury and the instruction invades the jury's province; (2) the instruction further considers the matter of extraordinary hazards and unusual dangers, neither of which concepts are supported by the evidence herein. No question was saved here as the defendant-appellant Scott has not set out in his brief any evidence from which this court may enlighten itself and know whether what he has said is or is not a fact; and further, the duty which defendant-appellant Scott and the duty of defendant-appellee Rodriguez owed to plaintiff-appellee when and if their automobiles were blocking a portion of the highway, and particularly the lane in which plaintiff was driving, properly set out the duty of either or both of the defendants to give warning, and further properly instructed that if the jury found such negligence was the sole proximate cause of plaintiff's injuries, if any, then the verdict should be for the plaintiff.

As we have heretofore said, in this opinion, instructions must be construed in harmony with each other and tendered Instruction No. 9 takes care of any objection of defendant-appellee Scott to plaintiff's tendered Instruction No. 8.

Furthermore, defendant-appellant cites no authority for what he has said in his written objection. TR. Rule 51 and AP. Rule 8.3 (A) (5) (7).

(3) Said objection further claims the instruction does not state as a matter of law the correct statement of contributory negligence which would be applied to the plaintiff herein.

Here again, defendant-appellant Scott fails to argue the point or cite any authority, except we might say that he inferentially did so when he said "Such instruction wholly fails to tell the jury that one is obligated to see and hear what he

should see or hear and use all of his senses," and cites *Day* v. *Cleveland* (1893), 137 Ind. 206, 36 N. E. 854.

This specific objection was not raised at the proper time in the trial court by written objection and furthermore, the matter complained of is covered by defendant-appellant Scott's Instruction No. 4, heretofore set out.

Defendant-appellant Scott objects to plaintiff's tendered Instruction No. 9, which instruction and written objections thereto timely given were as follows:

> "You are instructed that defendants Scott and Rodriguez had a duty to exercise reasonable care to give warning to plaintiff that their vehicles were blocking a portion of the main travelled portion of the highway and particularly the lane in which plaintiff was travelling, if you should find that their vehicles were so blocking a portion of the main travelled portion of the highway. If you find that either defendant or both of them failed to give such warning, then you may find such defendant negligent, and if you further find that such negligence was the sole proximate cause of plaintiff's injuries, if any, (amended by plaintiff) then your verdict should be for the plaintiff."

Defendant-appellant's objection was:

> "The defendant Garnal Scott respectfully objects to the giving of plaintiff's instruction No. 9 for the reason that the same is mandatory and confusing in that it assumes again that the defendant's Rodriguez's automobile was blocking the main traveled portion of the highway, but this is a question which must be decided by the jury."

Again, the defendant-appellant Scott's objection is that the instruction is mandatory and confusing in that it assumes that the defendant Rodriguez's automobile was blocking the main traveled portion of the highway, which was a question which must be decided by the jury.

We have heretofore held that a similar instruction is not mandatory and now so hold that this instruction is not mandatory. Neither does this instruction inform the jury that

defendant Rodriguez's automobile was blocking the main traveled portion of the highway.

Again, no evidence was set out in the brief from which we could determine where Rodriguez's car was setting. No citation of authority is given as to tendered Instruction ■ No. 9 and, therefore, in considering all the above reasons, especially the last, we are of the opinion that no error has been raised and the court correctly gave said instruction.

Defendant-appellant Scott's final objection to the instructions is to plaintiff's tendered Instruction No. 10, which he maintains is erroneous and results in what should have been reversible error.

Said Instruction No. 10 and the written objections thereto are in the words and figures as follows, to-wit:

"You are instructed that any person who operates a motor vehicle on the public highways of the State of Indiana is presumed to know the laws of this state which pertain to the operation of vehicles on said highways. Ignorance of the law is no justification, excuse, or defense for the violation of the law."

Defendant-appellant's objection:

"The defendant Garnal Scott respectfully objects to the giving of plaintiff's instruction No. 10 for the following reasons:

"1. The instruction enunciates a standard of criminal law which is completely inapplicable in the trial of civil causes.

"2. The instruction assumes that a reasonable man would know all of the laws of this state which pertain to the operation of vehicles on said highway when as a matter of fact, this is a question for the jury to decide.

"3. It places an impossible burden on this defendant in that he must prove, in order to succeed in the defense of this cause, that he knew the laws of this state which pertain to the operation of vehicles on the highway.

"This instruction purports to set a standard of duty for the operators of all motor vehicles which standard of duty purports to define the amount of care that the reasonable person would have performed under the same or similar circumstances; however, the instruction relieves the jury, incorrectly so, of the responsibility for determining whether or not a reasonable prudent man under the same or similar circumstances would have acted in the manner in which the defendant acted herein."

In defendant-appellant Scott's brief he urges that the instruction regarding a principle which is implicit in the framework of criminal law has no place in a civil damage suit.

In the case of *Carbon, Spec. Admr.* v. *Johnson, Admr.* (1967), 141 Ind. App. 369, 228 N. E. 2d 52, a case where the drivers of the two respective automobiles were killed in a head-on collision and there was a question as to one of the drivers being under the influence of intoxicating liquor, the trial judge, over objection of the appellant, gave an instruction to the jury as to the per cent by weight of alcohol in the blood is *prima facie* evidence that the defendant was not under the influence of intoxicating liquor sufficient to lessen his driving ability within the meaning of the statutory definition of the offense:

"'* * * Evidence that there was, at the time, from five hundredths per cent (.05%) to fifteen hundredths per cent (.15%) by weight of alcohol in his blood is relevant but is not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor within the meaning of this act. * * *''"

Appellant argued the inclusion of these criminal statutes injected a wholly extraneous and highly prejudicial element in the civil cause which would confuse and prejudice the jury. To this argument, the court said:

"It is well settled that technical errors in instructions are harmless and will not cause a reversal where the interests of the complaining party have not been prejudiced thereby. [Citing cases.]

"It is the opinion of this court that the interests of the appellant were not prejudiced by the giving of appellee's Instruction No. 27. * * *"

In the case at bar, plaintiff's Instruction No. 10 informed the jury that any person who operated a motor vehicle upon the public highway is presumed to know the laws of the State which pertain to the operation of vehicles upon said highway and that ignorance of the law is no justification. This is, in our opinion, an abstract statement of the law, it applying to all of the parties litigant in the case at bar.

We are of the further opinion that the instruction does not purport to set a standard of duty for the operator of all motor vehicles; this instruction is not on the standard of duty, it is on the standard of knowledge and the amount of knowledge required of all operators of motor vehicles on public highways before they use the public highway in the operation of their motor vehicles.

Defendant-appellant Scott relies on the case of *Gates* v. *Petri* (1957), 127 Ind. App. 670, 143 N. E. 2d 293, in his contention that the court erred in the case at bar. However, in the *Gates* case, the court stated that it was not error to refuse to give appellant's instruction which is merely a statement of an abstract proposition of law. In our case, we have the inverse of this proposition and therefore, although it may not have been helpful, there was no error in the court's giving plaintiff's tendered Instruction No. 10 over the objection.

Defendant-appellant Scott further relies in his brief on the case of *Abbitt* v. *Lake Erie W. R. Co.* (1898), 150 Ind. 498, 50 N. E. 729, in which a railroader was killed while working under a railroad car which was moved by an engineer when a fellow-employee did not keep a proper lookout to warn the deceased of the danger and to get to safety even though there was a red light on the front of the car on which the deceased was working. There is a further question in that case of

imputed negligence and agency. In that case the court refused to give the instruction which it determined to be an abstract proposition, and not in a manner applicable to the particular evidence in the case. This, like *Gates* v. *Petri, supra,* is another inverse case where the instruction was not given.

In the case at bar the instruction was given over the objection and which defendant-appellant Scott in his brief contends the proposition claimed in Instruction No. 10 served no beneficial purpose in the lawsuit; it created the impression for the jury that they had been instructed as to the care and conduct required of an ordinary man when, in fact, that is not the fact and was not the intent of the instruction. He further contends the instruction creates a stigma left by the presumption that a violation of the law has occurred when, in fact, no such issue is before the jury, and because of the strong adverse and prejudicial inferences to be drawn from the instruction, it was highly prejudicial to defendant and constituted error on the part of the trial court. It is singular that counsel did not contend that the giving of the instruction was reversible error his only contention was that it "constituted error."

The praecipe for the record in this cause called for all the items except the evidence of one witness and testimony of the attorneys relating to the covenant not to execute.

Such being the case, and the appellant Scott having failed to set out the evidence as required by Rule 8.3 (A) (7), this court now looks to the evidence set out in appellee Krueger's brief and cites as its authority therefor the case of *Cato* v. *Fine, supra,* which case holds that it is the court's duty to consider the evidence most favorable to the appellee and that where the statements of the case differ the court will relate the statement from appellee's statement and from the transcript of the evidence. Therefore, we will again rely on appellee's statement of the evidence.

At page 31 of appellee's brief he states:

"The instruction is perfectly proper and is not prejudicial to either party. Appellant Scott has conveniently left all of the testimony of the witnesses out of the Record. However, if the Court were to search the transcript of the testimony of witnesses, the Court would discover that each defendant and all of the defendants' witnesses managed to blurt out before the jury that 'they thought the law required them to leave their vehicles standing upon the highway until the police arrived.' "

The above statement is unrefuted in defendant-appellant Scott's reply brief. Considering the fact that defendant-appellant's witnesses managed to get before the jury that "they thought the law required them to leave their vehicles standing upon the highway until the police arrived" which knowledge was attempted to be given the jury in their opening statements and also in their final arguments, we are of the opinion that even though said Instruction No. 10 may have been in error, that the error would be harmless. In fact, in the face of the misleading tactics by defense counsel and their witnesses in their attempt to get evidence to the jury in opening statements and final arguments that each of the named defendants thought the law required them to leave their vehicles standing upon the highway until the police arrived the trial court was justified and correct in giving the said instruction to the jury. A party to a lawsuit cannot be permitted to get evidence to a jury by misleading means and then object to the trial court's instructing the jury in an honest way so that the jury may know the law of the case and not be prejudiced by such improper statements of counsel.

This court is of the opinion that where a party or parties to litigation attempt to prejudice the jury be getting to the jury evidence through misleading and improper means, they waive their right to object to the attempt of the adverse party of offset said evidence wrongly gotten to the jury, so long as the same is done within the rules of law,

for otherwise it would be not only necessary but mandatory for the trial court to grant a non-suit and order a new trial.

Defendant-appellant Scott's next contention is that the parties to this action proceeded through the trial of the cause in the Fountain Circuit Court and that instructions were settled, final arguments to the jury made by respective counsel and the court instructed the jury, which retired for deliberation in charge of their sworn bailiff on July 2, 1970.

Thereafter, on the same day, the jury returned into open court its verdict in favor of the plaintiff-appellee Krueger and against defendant-appellant Scott and defendant-appellee Rodriguez and assessed the damages against the defendants in the sum of $80,000. Thereafter, the jury was polled and was asked if $80,000 was the jury's verdict and each of the answers given by the respective jurors was in the affirmative and the jury was then excused.

After the return of the verdict and the jury was excused, defendant-appellant Scott first learned that plaintiff-appellee Krueger and defendant-appellee Rodriguez had entered into a disposition of their differences for an agreed consideration of $9,000.

This was followed by defendant-appellant Scott's motions pursuant to Rule TR. 59 and Rule TR. 60 and under which the court permitted evidence with respect to the agreement reached between the other parties and in which Mr. Donald P. Campbell, attorney for Mr. Rodriguez and for State Farm Mutual Automobile Insurance Company testified in open court concerning what the transaction was and when it was agreed upon, which facts adduced to the court were substantially that Mr. Townsend and Mr. Campbell were in Mr. Campbell's office after the jury had retired and made and entered into an agreement. This agreement so made and entered into was a Covenant Not to Execute against the defendant Rodriguez for the consideration of $9,000, which was to be paid to Krueger irrespective of the outcome of the litigation and which was to

be his property and which he did not have to repay to Mr. Rodriguez in event the jury returned its verdict in favor of Rodriguez.

Mr. Campbell testified that nothing was to be said about the Covenant Not to Execute until after the jury returned its verdict, as he thought there might be a verdict in favor of Mr. Rodriguez and he did not want himself or the insurance company which he represented to be embarrassed by having made the settlement.

In the meantime, the Covenant Not to Execute entered into between the parties had been formally reduced to writing and the same was introduced into evidence.

Mr. Campbell further testified that at no time following the submission of the cause of action to the jury for its deliberation was settlement, compromise, satisfaction of the judgment, release or anything other than a Covenant Not to Execute discussed between Donald Krueger and his attorney and Ruben Rodriguez and State Farm Mutual Automobile Insurance Company and their attorney; that the covenant shall not be construed nor is it intended as a compromise, settlement, satisfaction of the judgment, or release, as Donald Krueger expressly reserves the right to collect damages from Garnal Scott and his insuror in the event a judgment is rendered against said Scott.

Mr. Campbell further testified the sole promise of exchange was the promise on behalf of the State Farm Mutual Automobile Insurance Company to pay $9,000 in consideration for the execution of the Covenant Not to Execute by Mr. Krueger.

The record further disclosed the affidavit of Mr. John F. Townsend, Jr. as to the events that took place after the jury retired, which corroborates the evidence of attorney Campbell and further states that the only consideration for the promise to execute the Covenant Not to Execute which John F. Townsend, Jr. received from Donald Campbell on July 2, 1970, was Mr. Campbell's promise that $9,000 would be paid to plaintiff

when the agreement was reduced to writing, signed by Donald Krueger and delivered to Donald Campbell, which did not occur until several weeks after July 2, 1970.

In oral argument attorney Townsend stated that plaintiff-appellee Krueger had $9,000 in special damages and was in need of money pending a prospective appeal and that was a reason for his entering into the Covenant Not to Execute.

After appellant Scott first knew of the existence of the oral agreement of July 2, 1970, and the Covenant Not to Execute, he filed, on August 27, 1970, his motion for relief from judgment pursuant to Rule TR. 60 (B) (7) and (8) requesting the court to determine the judgment had been fully and finally satisfied, released and discharged, and it was pursuant to his pleading that the trial court held the aforesaid hearing.

On August 27, 1970, appellant Scott filed his motion to correct errors. In his motion to correct errors he stated that the agreement constituted a full release and/or a release against all parties, including Scott himself. After the aforesaid hearing both motions were overruled by the court and this appeal followed.

Defendant-appellant Scott further urges that the agreement between Krueger and Rodriguez constituted newly discovered evidence which, if the evidence had been known to Scott or his representatives, that his attorneys might have introduced said agreement into evidence in said trial, which evidence if it had been presented could have substantially changed the result of the case. He further insists that the secret nature of the agreement constituted a fraud on the court and upon the jury in that there was no issue for determination by the jury between Krueger and Rodriguez.

Defendant-appellant Scott relies on the case of *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 50 N. E. 2d 875.

In *Bedwell,* the plaintiff was a minor, a guest passenger in an automobile which collided with a train. The next friend brought the action against the operator of the motor vehicle

in which she was a passenger. To the complaint appellant Bedwell filed answer in two paragraphs, the second alleging that:

"... 'the plaintiff ... elected to file a claim against the New York, Chicago & St. Louis Railroad for the injuries sustained by her in said collision, ...; that the plaintiff fixed and determined the extent and value of the injuries sustained by her and the same was paid in full by the ... Railroad Company and a receipt and release was executed by the plaintiff to the said ... Railroad Company therefor.' "

At the trial of the cause, appellant Bedwell introduced evidence, over appellee's objection, to the effect that appellee's guardian had asked and obtained authority from the Adams Circuit Court to execute a covenant not to sue said railroad company for a consideration of $1,000. Appellant also introduced into evidence answers to interrogatories made by the appellee disclosing her guardian had received $3,000 from the railroad company.

In trial the guardian was asked to tell the jury if the railroad company paid him as guardian any sum of money for the injuries his wife sustained in that collision. Objection was made on the ground that there had been no evidence of a settlement and that the record of the guardianship proceedings would be the best evidence. This objection was sustained and the ruling assigned as error.

The court held there is no merit to the proposition that the record of the guardianship proceedings constituted the best evidence; the court further held that the order of the Adams Circuit Court directing appellee's guardian to execute a covenant not to sue the railroad company for a consideration of not less than $1,000 did not preclude the guardian from receiving $3,000 in payment for said injuries.

In *Bedwell* the court further said:

"It is well settled that all joint tort-feasors liable for an injury are discharged by the unqualified release of one.

The amount of the consideration paid for such a release is immaterial so long as it is sufficient to support a contract and the transaction is not tainted by fraud or mistake. Likewise, full satisfaction of such a claim for damages by one of the tort-feasors operates to discharge all, though no release is executed. *On the other hand, it is equally well settled that a covenant not to sue one tort-feasor does not bar an action against the others, but only operates as a satisfaction of the damages, pro tanto, as to the benefits received. But if the consideration paid for a covenant not to sue is full compensation for the injury, the liability is discharged as to all, regardless of the character of the instrument. And it may be added that under an answer of full satisfaction by a joint tort-feasor a defendant is entitled to a pro tanto credit for anything less than full payment which the plaintiff has received from that source. Whether the payment was in full or partial is for the jury to determine from the evidence.* This is consistent with the rule that an answer of payment will authorize proof of a credit...." (Our emphasis.)

In *Bedwell*, the second paragraph of answer alleged both a release and a payment. Our Supreme Court, in *Reno* v. *Hollowell* (1827), 2 Blackf. 38, said:

"This plea sets up two distinct matters of defence, payment and release, either of which alone, if well pleaded, would be a sufficient bar to the action. The plaintiff might have objected to it, by special demurrer, for duplicity; but not having done so, he was bound to answer all its parts."

The court further held in *Bedwell:*

"Under the issues it was proper for the appellant to show that the claim sued on had been fully compensated by the railroad company. The rejected evidence was calculated to do this and its exclusion was error...."

The court said that the trial judge misconstrued the issues as further disclosed by his giving the instruction on its own motion by which charge the jury was told it was not to consider the railroad company had paid the plaintiff $3,000 for any purpose which was likewise error for the reasons stated. The court further said:

". . . Had the jury been permitted to determine the issue presented by the second paragraph of answer, the verdict might have been for the defendant. . . ."

Defendant-appellant Scott next cites the relies upon the case of *Northern Indiana Public Service Company* v. *Otis* (1969), 145 Ind. App. 159, 250 N. E. 2d 378, in which he states that this court recognized that the defendant, in the last cited case, which shall be referred to as NIPSCO, could have presented the loan agreement in the trial of the case. However, the defendant in NIPSCO did not choose to offer the loan agreement into evidence at the trial, nor did he offer any part thereof.

Defendant-appellant Scott further contends that in the case at bar had Scott been permitted to show the jury the payment of $9,000 to plaintiff-appellee Krueger by defendant Rodriguez, as payment was shown in the *Bedwell* case, there might well have been a verdict for defendant-appellant Scott, or a verdict of less than $9,000. Appellant Scott further contends that if the agreement did not constitute a full release, that he—Scott—had a right in any event to present the evidence as to the payment.

We must not overlook the fact in distinguishing between these two cases that in *Bedwell* there was an affirmative paragraph of answer that the $3,000 had been paid by the railroad company in consideration for receipt of a covenant not to sue and was, therefore, an issue in trial of the cause on its merits.

In the case at bar the case had been submitted to the jury, which was in the process of its deliberations when the covenant not to execute was agreed upon between plaintiff-appellee Krueger and defendant-appellee Rodriguez.

In NIPSCO, the defendant-sub-contractors did not choose to offer the loan receipt agreement into evidence at the trial, *or any part thereof,* and the jury could not have been and was

not aware of the contents of the loan receipt agreement. Judge Sharp, in NIPSCO, said:

"A loan receipt agreement has been recognized as a legitimate device under Indiana law. An insurance company may enter into a loan receipt agreement with a third party who has been injured by the alleged negligence of its insured. In *Klukas* v. *Yount* (1951), 121 Ind. App. 160, 164, 98 N. E. 2d 227, 229, this court stated:

" 'The question in this case is whether an insurance carrier may lend anyone who has suffered injury through the negligence of its insured an amount sufficient to cover his loss under an agreement that he will institute suit in his own name against the one causing the loss, or against another insurance carrier, and that he will be obligated to repay the loan only to the extent of his recovery in the suit; and whether such a transaction amounts to absolute payment or has the effect of satisfying such person's loss. Counsel states that there are no cases on this question in this state and we have found none but there are innumerable foreign cases covering this question. (Citations omitted)

" 'These authorities point out that it is the intention of the parties to the transaction which determines whether or no it is a loan or an absolute payment.

" 'Under the authorities just cited, the loan did not amount to a payment of the loss nor did the lender, State Farm Mutual Automobile Insurance Company, become subrogated to the claim of the appellee against appellant so as to require the action to be brought in its name.' "

Many foreign cases were cited on this point of law pertaining to loan agreements and covenants not to sue. Judge Sharp further said:

"In *Klotz* v. *Lee, supra,* [36 N. J. Super. 6, 114 A. 2d 746 (1955)] there was an agreement during the pendency of the action between the plaintiff and one defendant and his insurer in which it was agreed that if the jury returned a verdict, the insurer would pay plaintiff a certain sum in full satisfaction, subject to the condition if verdict was against all defendants the plaintiff would not exact more than one-half of the verdict from said defendant or his

insurer. *This was a valid agreement. The agreement was revealed to the trial judge and counsel for all parties as soon as it was executed. The court also concluded that such agreement should not be disclosed to the jury.*" (Our emphasis.)

Judge Sharp, speaking further in NIPSCO, said:

"It is elementary the Appellee-Plaintiff could have chosen to sue only one of the two defendants. She could also have chosen to levy execution on a judgment against either tortfeasor and received full satisfaction thereof against either provided she received only one full satisfaction. She could have received part satisfaction from one tortfeasor in consideration for a covenant not to execute and proceeded for the balance of the judgment against the remaining tortfeasor. Likewise, she could have executed a covenant not to sue as to one potential joint tortfeasor and proceeded against the other."

(Citing *Black* v. *Marsh* (1903), 31 Ind. App. 53, 67 N. E. 201; *Bedwell* v. *DeBolt, supra.*)

Judge Sharp further said:

"These authorities from Indiana and other jurisdictions certainly provide for the use of a loan receipt agreement and use of the same is neither contribution among joint tortfeasors or an assignment of a cause of action sounding in tort. See cases collected in 1. A. L. R. 1528, 132 A. L. R. 607 and 157 A. L. R. 1261."

Defendant-appellant Scott argues the court erred in not calling the jury back into the box and giving them an instruction that after they had retired to deliberate upon a verdict Krueger and Rodriguez had entered into the Covenant Not to Execute in order that the jury could have considered the Covenant Not to Execute in their deliberations. As authority for this defendant-appellant Scott cites the Supreme Court of Wisconsin in the case of *Trampe* v. *Wisconsin Telephone Co.* (1934), 214 Wis. 210, 252 N. W. 675 and (1934), 214 Wis. 218, 252 N. W. 678. Appellant Scott quotes the *Trampe* case, at page 678, which states:

"We accept the statement that there was no intention of wrongdoing in these particulars, but the fact still remains that imposition was practiced upon the court, and that it was done by withholding facts which were material and ought to have been disclosed before the trial started. A question of public policy enters here. The deliberate withholding of information of the existence of the settlement of important matters so clearly imposed a fictitious suit upon the court that we are bound to hold that it impeded the regular administration of justice, that it resulted in the trial of issues which were not real, and the action should be dismissed."

In the *Trampe* case from Wisconsin the court dismissed the complaint and entered judgment in favor of the appellant Trampe. Defendant-appellant Scott now contends that he is entitled to entry of a judgment because said judgment was satisfied because of the payment prior to rendition of the jury verdict as heretofore set out in this opinion. He further contends that in no event should appellant Scott be deprived of a new trial under the circumstances involved in the making of the agreement without disclosure to the court or to appellant Scott.

It must be remembered that the distinction between the *Trampe* case and the case at bar is that in the *Trampe* case the agreement was made and entered into before the trial of the cause was begun before the jury.

Further, the Wisconsin statute differs from the Indiana statute on contribution of joint tort-feasors.

In NIPSCO, Judge Sharp, speaking of *Trampe*, wherein the Wisconsin Supreme Court condemned the settlement between the plaintiff and one of two joint tort-feasors because it placed a disproportionate share of the burden on the other wrongdoer, and thus defeated the policy of contribution followed in Wisconsin (but which is not the law in and is not followed in Indiana), states that, therefore, the *Trampe* case holding the agreement invalid in Wisconsin is not authority in Indiana either for its reasoning or its result.

It is elementary in Indiana that a person suffering injuries and damages by joint tort-feasors may elect to sue one or all, and a collection of the full amount from one is a collection from all and a valid release of one, although it may be for much less consideration than the plaintiff's injuries, is a valid release as to all joint tort-feasors.

In NIPSCO Judge Sharp further stated:

"Unquestionably the Plaintiff-Appellee Otis could have given the Appellant NIPSCO a covenant not to sue in consideration for $50,000.00 and proceeded against Dehner. She could have given a covenant not to execute against NIPSCO *after* trial. She could have given a covenant not to sue or execute against NIPSCO before trial. She could have accepted a so-called advanced payment from NIPSCO before trial."

He further states that the arrangement between Otis and NIPSCO represents a blend of the rules set out in his opinion, with the further statement that it is, however, a legally permissible blending of them which is not contrary to public policy.

Justice Givan of our Supreme Court, in the case of *American Transport Co.* v. *Central Indiana Ry. Co.* (1970), 255 Ind. 319, 264 N. E. 2d 64, passed on the validity of a loan agreement between an injured party and one of the joint tort-feasors.

In that case a temporary injunction was issued restraining the administrator of the estate of James Edward Jones from executing against the appellee Central Indiana Railway Company for the entire sum of a judgment rendered in a tort action.

The cause was originally filed by the administrator of the estate of James Edward Jones against American Transport Company and Central Indiana Railway Company as joint tort-feasors for Jones' wrongful death. In due course the cause was tried to a jury which returned a verdict for the plaintiff in the amount of $132,000. Both American Trans-

port and Central Indiana Railway filed motions for a new trial which were overruled. Afterward, the administrator entered into an agreement with American Transport and its insurer, Liberty Mutual Insurance Company, in what was designated as a "Covenant Not to Execute."

By the terms of the agreement subject to the approval of the Probate Court having jurisdiction of the Jones estate, American Transport Company agreed to dismiss its appeal and abandon its legal defenses. The Anderson Banking Company, as administrator, agreed to pursue legal and equitable remedies for the collection of the judgment against Central Indiana Railway alone. Liberty Mutual Insurance Company, on behalf of American Transport, agreed to advance to The Anderson Banking Company as administrator of the estate of James Edward Jones the sum of $85,000 upon the understanding and condition that if the administrator was ultimately unsuccessful in collecting its judgment from Central Indiana Railway it would have no responsibility to repay the $85,000 to Liberty Mutual. If, on the other hand, The Anderson Banking Company succeeded in its action against Central Indiana Railway, the administrator agreed that it would set aside from such funds the sum of $47,000 plus interest on the amount of the judgment until it was paid, plus court costs and plus the cost of printing the briefs on appeal should the matter be pursued that far. These sums so calculated were to be the property of the administrator and not subject to the repayment of the advancements made pursuant to the agreement. Funds received from Central Indiana Railway in excess of the above amounts were to be used for the purpose of repaying Liberty Mutual Insurance Company the monies advanced pursuant to the agreement. It was the stated purpose of the agreement to furnish the widow and dependent children of the decedent the gross amount of $85,000 free from any and all chance of loss and to make those funds immediately available, but at the same time retain for the widow and dependent children the opportunity to recover

the full amount of the original judgment. It was specified that the amount of repayment would never exceed $85,000, but that it would be possible that the entire advancement of $85,000 would be recovered by the company. This agreement was approved by the Madison Superior Court on July 29, 1965, with the American Transport Company immediately dismissing its appeal, but the railroad continued its appeal. The Appellate Court affirmed the trial court, and transfer was denied.

Thereafter, the railroad filed a complaint for temporary and permanent injunction in the trial court against American Transport Company, Transport Motor Express, its successor in interest, The Anderson Banking Company as administrator, and Liberty Mutual Insurance Company as the liability insurance carrier. The railroad obtained a restraining order without notice restraining The Anderson Banking Company from executing on the judgment against the railroad in the sum of $132,000 other than by accepting $69,083.96 which had been conditionally offered by the railroad in full satisfaction of the judgment. The trial court, after hearing on the matter, issued the temporary injunction requested, from which the appeal was taken. Appellant claimed the trial court erred in granting the temporary injunction on the ground that the payment of $85,000 under the terms of the agreement constituted partial payment of the judgment of the Shelby Circuit Court and that the railroad had a right to indemnity against American Transport. (The cause had been transferred to the Shelby Circuit Court.)

The appellant contends the agreement was a loan agreement between American Transport and the administrator and the appellee contends it was merely a covenant not to execute and payment of $85,000 constituted partial payment of the judgment and that the railroad was entitled to *pro tanto* credit of the $85,000 on the judgment.

Justice Givan, in writing on this, stated that our Supreme Court looked to the express terms of the agreement to determine the intent of the parties as to its true nature and cited *Klukas* v. *Yount* (1951), 121 Ind. App. 160, 98 N. E. 2d 227. The able jurist further determined the terms of the agreement as above set out clearly indicated that the administrator and the trucking company, together with its insurer, clearly understood the law of loan agreements as it exists in Indiana and had every intention of coming within the purview of that law. He then discussed the case of *Northern Indiana Public Service Co.* v. *Otis, supra,* wherein he not only agreed with the thinking and holding of Judge Sharp, but quoted therefrom, a portion of which was that in NIPSCO the appellant-plaintiff could have proceeded against only one of the joint tort-feasors or after obtaining a judgment against both tort-feasors at that point have levied execution on the judgment against either of the tort-feasors and obtained full satisfaction from either.

> "The only restriction, of course, is that the person seeking relief received only one full satisfaction. *As the Appellate Court observed, this technique has been used by the railroads for at least thirty years to induce injured parties to proceed against the railroads' joint tort-feasor. Loan receipt agreements are certainly desirable from the point of view of the damaged party. All members of the bench and bar are aware of and concerned with the fact that an injured party may wait several years while prolonged and varied court battles are waged before actually obtaining redress for the injury. . . ."* (Our emphasis.)

Justice Givan, then discussed the situation of need for immediate funds to compensate for loss of earnings of the husband and father which may be withheld during the period of time when the maintenance and education is at its greatest need, having in mind, I am sure, the length of time it takes to get a case at issue and tried and the length of time it takes to dispose of an appeal, should there be an appeal.

Justice Givan further says:

". . . *The willingness of one joint tort-feasor to place a substantial sum of money at the disposal of the damaged party with a possibility of no recoupment is certainly to be encouraged.*

"*We hold that the agreement in this case was in fact a loan receipt agreement, and that it in no way constituted a partial payment or partial satisfaction of the judgment rendered by the Shelby Circuit Court.* The trial court was in error in granting the temporary restraining order. Appellant is, under the law of Indiana, entitled to proceed against the appellee, Central Indiana Railway Company, for the full amount of said judgment. It is, of course, then liable under the terms of the agreement for the repayment of the loan from American Transport and its insurance carrier. . . ." (Our emphasis.)

Defendant-appellant Scott in his brief contends that the trial court should have granted a judgment in favor of said appellant on the basis of release and satisfaction of the judgment or should have ordered a new trial.

This argument presents nothing to this court for the reason that it is not supported by any rule of court or citation of authority, as is required by Rule AP. 8.3(A)(7).

Defendant-appellant Scott admits in his brief that a covenant not to sue or a covenant not to execute as against one tort-feasor does not bar an action against a remaining tort-feasor and further contends therein that it is likewise clear that the consideration paid may be presented to the jury for its determination as to whether the sum so paid was full or partial compensation for the injury. It is a matter which is at the option of the remaining tort-feasor as one to be presented or not presented by way of pleading and/or presentation of evidence.

With the contention of the recognition by the courts of Indiana that a covenant not to sue or a covenant not to execute does not bar an action against a remaining tort-feasor we wholeheartedly agree.

Further, we wholeheartedly agree that under the holding of *Bedwell* v. *DeBolt, supra,* that the consideration paid for a covenant not to sue or a covenant not to execute as ▇ against one tort-feasor as to whether the sum so paid was full or partial compensation for the injury may be presented or not presented by way of pleading and/or presentation of evidence. However, we agree with this latter contention of Scott that *only where the covenant not to sue or covenant not to execute or a loan receipt agreement may be presented or not presented as evidence has the necessary prerequisite that any one of such three named agreements was made and entered into prior to the closing of the issues where such document may be pleaded,* if desired, *or if the agreement be entered into prior to the time that all parties have presented all their evidence to the jury or prior to the time that all parties have rested their case.*

This court has, perhaps, unduly burdened this opinion by setting out the excellent discussion of the law in Indiana as set out by Judge Sharp in NIPSCO and the equally excellent supplement thereto and affirmation thereof by Justice Givan in *American Transport Co.* v. *Central Indiana Ry. Co., supra.* Our purpose in setting out so much detail of the two cited cases is to:

(1) Set out that covenants not to sue, convenants not to execute and loan receipt agreements are legal and are to be encouraged in the settlement of litigation.

(2) To show that defendant-appellant's attorney's charge of fraud as set out in his brief did not exist, as he admitted in his argument that there was no fraud or personal impropriety on the part of attorney Townsend or attorney Campbell in their acts after the case had been submitted to the jury.

From the reading of the briefs and the oral argument of the parties this court finds no wrongful or fraudulent acts on the part of any of the attorneys or their clients in this cause.

(3) To distinguish between the case at bar and the cited

cases in that the case at bar the cause had been submitted to the jury, which was in the act of deliberating upon its verdict when the covenant not to execute was agreed upon.

Any agreement entered into such as was done in this case cannot be considered to be newly discovered evidence as the same is not evidence in the sense in which evidence is usually considered. The agreement herein is evidence that first came into existence at a time when it was too late to introduce it to the jury which had heard the case and was in its deliberations. Although this is not evidence the trial court did hear defendant-appellant Scott's motions under Rules TR. 60(B) and TR. 59, at a later date after the covenant not to execute was reduced to writing, after which hearing he determined there was no irregularity in what had been done.

This court can think of no better way for a trial court to get itself reversed than to talk to or communicate with a jury after the cause has been submitted to them, with the exception being that should the jury send out a note with the bailiff that they want an instruction or instructions re-read, the court may, in response thereto, bring the jury back into open court in the presence of counsel for all parties and re-read *all* of the final instructions which have theretofore been read to the jury and then only after having prior consent of all parties to re-read all the instructions before the jury is brought back into open court.

In the case at bar plaintiff-appellee Krueger and defendant-appellee Rodriguez had a legal right to settle the controversy between them at any time, either before trial, during trial or after the jury retired to deliberate or after the jury had returned its verdict. The agreement reached while the jury was dliberating and later reduced to writing was not proper evidence to give to the jury. It would have been reversible error to have brought the jury back into open court and read to them an instruction on the agreement between plaintiff-appellee Krueger and defendant-appellee Rodriguez.

For many years lawsuits have been settled "on the court house steps" just before the commencement of trial; they have been settled on the morning of trial before the jury was brought into the jury box; they have been settled after the jury has been selected; they have been settled after long and arduous trials which have resulted in hung juries and some of which have resulted in large verdicts for the plaintiff. It is not infrequent that when a defendant who is represented by an insurance company has refused to settle a lawsuit and has tried the same to a jury, or the court, and has a bad result when an enormous verdict is rendered against them then the insurance company immediately commences negotiations to settle for a lesser amount, threatening an appeal if the same is not done in order to save money and many of such offers are taken up and are accepted for much less than the verdict and for less the worth of the case because the plaintiff does not have the funds with which to live and pay his specials while the case is still being dragged through courts of appeal.

The insurance companies having resorted to such practices over a period of years cannot now be heard to complain that a co-defendant settled with an injured party (plaintiff) for a nominal consideration, which would defray his special expenses and give him funds on which to live pending an appeal. Our courts have said that co-defendants are not necessarily friendly and for one to try to save money at the expense of the other is not an uncommon practice.

In the case at bar the settlement was not a unilateral one. In fact, plaintiff-appellee Krueger was to and did receive $9,000 in consideration of his executing the Covenant Not to Execute. There was no way that he had to forfeit this. The co-defendant, Scott, had the same opportunity to attempt to negotiate a settlement of the action by purchasing a covenant not to execute. This he did not do.

The judgment against both defendants being for $80,000,

defendant Scott would now be responsible for $80,000, less the $9,000 paid by the defendant, Rodriguez. The plaintiff-appellee Krueger, was not entitled to recover more than $71,000 from defendant-appellant Scott after the execution of the Covenant Not to Execute and after the jury returned its verdict of $80,000. A double recovery is not permitted in Indiana.

Finding no reversible error the judgment of the trial court is hereby in all things affirmed.

Robertson, P.J., Lybrook, J., concur.

NOTE.—Reported in 280 N. E. 2d 336.